(No. 33216.—

LEE ROY KAHN, Appellant, *vs.* JAMES BURTON COMPANY *et al.*, Appellees.

*Opinion filed May 20, 1955.*

HERSHEY, and DAVIS, JJ., dissenting.

LOUIS G. DAVIDSON, of Chicago, for appellant.

CROWE, YATES, ABRAHAMSON & FISK, of Chicago, (BURT A. CROWE, of counsel,) for appellee James Burton Company; HINSHAW, CULBERTSON, MOELMANN & HOBAN, of Chicago, (OSWELL G. TREADWAY, of counsel,) for appellee Malkov Lumber Company.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Petition for leave to appeal from the First District Appellate Court has been granted. The Appellate Court decision reversed the judgment of the superior court of Cook County and remanded the cause with directions to enter judgment for the defendants, James Burton Company, a corporation, and Malkov Lumber Company, Inc., a corporation, and against the plaintiff, Lee Roy Kahn. Defendants, Jacob A. Krieger and Bessie Krieger, were not involved in any proceedings subsequent to entry of judgment in the trial court, the trial court having directed a verdict in their favor and plaintiff having assigned no error for such action. This suit concerns personal injuries received by a minor upon a vacant lot in Chicago owned by the Kriegers and upon which a two-story brick home was being constructed for them by the defendant James Burton Company, a construction company. The child was injured when a pile of lumber upon which he had been playing toppled over and certain boards of the pile fell upon him. The lumber was delivered by the defendant Malkov Lumber Company, Inc., on the day prior to the occurrence.

Plaintiff, a minor, eleven years of age at the time of the occurrence, instituted the action by his father as next friend. He is the appellant here and shall hereinafter be referred to as plaintiff. Defendant James Burton Company will hereinafter be referred to as the contractor, and defendant Malkov Lumber Company, Inc., will hereinafter

be referred to as the lumber company, said defendants being the appellees in this court.

Plaintiff's amended complaint alleges ownership of certain land in the city of Chicago to have been in the Kriegers, July 20, 1948, at which time the contractor was constructing a home for them; that the lumber company had piled planks and lumber on the land which also had thereon sand piles and other items of building materials, machinery and equipment readily visible to children upon adjacent public highways; that said conditions tended to allure and attract them to the premises; that on the date of the occurrence and prior thereto children were attracted and played on the premises near the materials and equipment; that the lumber piles were left on the premises without adequate support and that while the eleven-year-old plaintiff, who had been attracted by the condition of the premises, was playing upon a lumber pile the same collapsed causing the serious injuries complained of. The usual allegations of plaintiff's due care for a child of his age, and proximate cause were made. The negligence charged was to the effect that the piles of lumber were permitted to remain in an unsafe condition without adequate support; failure to warn plaintiff of the danger of coming close to such piles of lumber and failing to take reasonable precautions to guard the premises in order to prevent children from coming into contact with the lumber piles as they allegedly existed. The defendants were charged with actual or constructive knowledge of the fact that the existent circumstances attracted children to the premises but failed to take reasonable measures to correct the alleged dangerous conditions.

The contractor denied plaintiff's allegations and also alleged that it was not in possession or control of the premises before and on the date of the occurrence. The lumber company denied plaintiff's complaint and charged plaintiff with negligence. A jury's verdict in the amount of $20,000

was returned in favor of plaintiff, and after the usual post-trial motions judgment was rendered thereon against the contractor and the lumber company.

The Appellate Court's opinion, reported in 1 Ill. App. 2d 370, sets out the facts of the case in detail and no purpose will be served by further particularization. Only essential portions of the evidence will be dealt with herein. On July 20, 1948, plaintiff was a boy eleven years and four months of age. The Krieger premises were open, unenclosed premises, upon which their two-story home was to be constructed in a residential neighborhood in the city of Chicago. When the excavation was completed and the foundation had been poured, the masonry contractor notified Krieger that the carpenters could start their work. On July 19, an officer of the contractor ordered lumber from the lumber company and delivery was made on the same day. The order consisted of two pieces 2 x 10 ten feet long; 50 pieces 2 x 10 twelve feet long; 14 pieces 2 x 10 fourteen feet long; 50 pieces 2 x 10 sixteen feet long, and 267 pieces 1 x 6 twelve feet long. The delivery was made about 4:30 in the afternoon. The delivery and unloading were made in the usual and customary manner in accordance with the uniform practice in the city of Chicago. The load was conveyed by a tractor-trailer and the bed of the trailer had metal rollers operated by a ratchet wrench. The load was arranged so that when unloaded the lumber needed first would be at the top of the pile. Chains are wrapped around the load, drawn tight and locked with a binder and the load was four and one-half feet high and six feet wide. Upon finding a level spot the load is rolled half-way off and bound with a chain, two-by-fours are placed on the ground as cross-pieces and then the load is dropped from the bed of the truck which is approximately 4 feet from the ground. The entire load is approximately 7 or 8 tons and a single 2 x 10 sixteen feet in length weighs approximately 150 pounds. The truck driver testified an apron

on the trailer kept the load from falling hard but that it dropped 2½ feet from the bottom of the apron. The chains were removed after delivery and the lumber pile left without bracing or support. The lumber was placed on the southwest corner of the lot within 15 feet of the intersection of two public alleys. The boards on top of the pile were larger than the lower boards. There is no evidence as to any change in the pile from the time of delivery to the instant of the occurrence. On prior occasions several children had played on the mound of dirt thrown up by the mason contractor. Plaintiff had never played on the lot before he and a companion stopped their bicycles and went upon the piled lumber on the day in question. In plaintiff's childish fancy the lumber pile resembled a boat. Plaintiff testified the prow of the ship was to the south and that there were two piles, the piles coming together and to a point at the southern end. Plaintiff climbed up the pile, using the step-like formation created by the uneven piling of the boards and remained on the south end of the pile. While reaching up to tie a piece of string to a branch of a nearby tree for the purpose of having a "toll bell" the planks gave way causing plaintiff to fall, with some of the heavier planks falling upon him. Plaintiff stated he did nothing to disturb the boards or dislodge them before he fell and as far as he knew had done nothing in the way of moving around to knock the boards down or bump them over.

The Appellate Court held that as a matter of law the supplier of the lumber was not guilty of any negligence. It held there was no duty on the supplier to guard or protect the premises since it was not in possession or control thereof. The Appellate Court also found there was no proof that the lumber was unloaded at a place where children had been playing in large numbers but that the children had been playing on the mound of dirt thrown up by the mason contractor and not where the lumber was

deposited. It also pointed out that there was no evidence that any child was present at the time the lumber was unloaded or that the supplier had any knowledge that any children had ever played on the premises. The court then distinguished cases holding a liability where the injury occurred in a public street, where plaintiff could not be a trespasser, and not on private premises.

After a discussion of cases cited by plaintiff the court noted wherein they were distinguishable and then held as a matter of law that the supplier was not guilty of any negligence and that the trial court's judgment on the verdict should be reversed. The court in its opinion declared that the supplier owed the plaintiff no duty to stack the lumber in any particular way and further that there was no evidence from which it can be inferred that the lumber left on the premises by the supplier required any support or brace to keep it in position.

The lumber company contends in this court that it owed no duty to anyone other than the owners and the contractor, and that since it was not in possession or control of the premises it could not be held liable for the injuries to plaintiff. The position cannot be sustained. In so far as the lumber company is concerned plaintiff was not a trespasser; and if it should have reasonably anticipated that children might come upon the premises and be injured, the fact that it did not own or control the premises cannot relieve it from liability for the consequences of its negligence. (*Stedwell* v. *City of Chicago,* 297 Ill. 486.) In the case cited the city owned an electric light wire strung on posts twenty-five feet in height. At a street intersection the wire passed under an elevated railway structure, and was fastened by brackets to steel posts supporting the structure. The wire at that point was about thirteen feet above the street. The posts and the crosspieces attached thereto were owned by a railroad, and not by the city. The plaintiff, a boy eleven years and seven months of age,

climbed up the crosspieces, came into contact with the wire, and was severely injured. To reverse a verdict and judgment against it the city argued that the wire was not attractive to children, and that if anything was attractive to them it was the latticed pillar belonging to the railroad company. In affirming the judgment, however, this court observed: "If the pillar, constructed as it was, presented an attraction and allurement to children to climb it in their play and they did so use it in their childish sports, and plaintiff in error placed the dangerous wire in such close proximity to it that in its play a child might come in contact with the wire and be injured, the fact that the plaintiff in error did not construct or own the pillar would not, itself, relieve it from liability. Where an attractive thing is so located that in yielding to its allurement a child is brought in direct contact with a danger placed there by someone else, the person responsible for creating the dangerous condition will be liable."

In the case at bar the questions whether the lumber was so piled as to create an unreasonable danger to children playing thereon, and whether it was so attractive to children as to suggest the probability that children would climb onto it, were questions for the jury under the circumstances shown in the record. In *True & True Co.* v. *Woda,* 201 Ill. 315, the defendant company was engaged in building a shed near its factory, and caused two wagonloads of lumber to be piled on the sidewalk in front of the premises. The area was built up mainly with small residences. The pile of lumber was six or eight feet wide at the bottom, five or six feet wide at the top, and from three to five feet high. As plaintiff's child was passing or standing near the pile of lumber, some heavy planks or timbers from the pile fell upon him, causing his death. It was not clear what caused the lumber to fall, but other children were near at the time and there was some evidence tending to show the lumber was imperfectly piled. In sustaining a recovery by

the plaintiff, we observed: "The pile of lumber, as thus situated, was of such character that the jury were justified in finding, from the evidence, that the appellant should have known it would be likely to attract small children, and if they climbed upon the lumber as piled it would be likely to fall upon them and they be injured. (*City of Pekin* v. *McMahon*, 154 Ill. 141.) The jury, from the evidence, were justified in finding that appellant's negligence was the proximate cause of the injury, and the court did not err in declining to take the case from the jury."

A similar conclusion must follow in the present case. The creator of certain conditions dangerous and hazardous to children because of their immature appreciation of such dangers and hazards must be held to a certain standard of conduct for the protection of such children in accordance with the attendant circumstances and conditions. Account must be taken of the cost and burden of taking precautionary measures and of the right of families and society to rear and develop children with freedom of activity in their communities, without being subject to unreasonable risks which might cause serious injury or death to such children. All men are presumed to know those things which are matters of common knowledge and must be held, in the absence of actual knowledge or notice, to have reasonably anticipated such occurrences as in the ordinary nature of things reasonable men should know will probably occur. Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. The duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest, or the proximity of relationship, but extends to remote and unknown persons. (*Wintersteen* v. *National Cooperage and Woodenware Co.,* 361 Ill. 95.) The test in the case at bar

is whether the lumber company in the exercise of ordinary care could reasonably have anticipated the likelihood that children would climb onto the lumber and would be injured if it were not securely piled.

We think the jury was justified in finding, from the condition of the lumber pile, its proximity to the intersection of two public alleys, the fact that it was delivered during summer vacation in a populous community, and other facts and circumstances in evidence, that defendant should have known it would be likely to attract children who might be injured if they climbed upon the lumber as it was piled. A verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable. (*Lindroth* v. *Walgreen Co.* 407 Ill. 121.) In the trial of a law suit, questions of one's due care, another party's alleged negligence and the proximate cause of such injured party's injuries and damages are pre-eminently questions of fact for a jury's determination. Under our system of jurisprudence, jury determinations can be set aside only when a court of review, or a trial court upon proper motion, is clearly satisfied that they were occasioned by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence. We think the trial court properly overruled defendant's motion for judgment notwithstanding the verdict, and that the Appellate Court erred in deciding otherwise.

As to the contractor, the evidence sufficiently shows it to have been in possession and control of the property at the time of the accident. This defendant insists that there is no evidence to support the finding of the jury that it maintained an attractive nuisance on the premises. The plaintiff on the other hand, contends that the lumber pile constituted an attractive nuisance, and that in any event the question whether conditions on the lot amounted to an attractive nuisance was one of fact for the jury to decide.

The naming or labeling of a certain set of facts as being an "attractive nuisance" case or a "turntable" case has often led to undesirable conclusions. The inclination is then to find a *stare decisis* pigeonhole or category. The difficulty in such procedure is that too often the result of such a search is the reaching of irreconcilable conclusions. In certain cases referred to as "attractive nuisance" cases the courts point out that the infant, because of his immature judgment and inability to appreciate certain conditions, was attracted and allured to certain premises and therefore is no longer a trespasser but is to be regarded as an invitee. It follows then that certain duties are owed to him. However, we then find the same courts declaring that this same immature child was attracted to the premises by object A but was injured by object B, and can therefore find no remedy at law for the reason that his injury was not proximately occasioned by the attracting cause. Many cases hold that the attraction must be the inherently dangerous condition which itself causes the injury complained of. Many cases hold otherwise. Another class of cases deal with watercourses, ponds and lakes. Yet liability has been sustained in these cases where it appears the water caused the drowning. The courts then declare that the water in itself cannot be the attraction for a case of liability but that other objects must have attracted the children. It has been ruled that the complaint must allege such attractive objects as floating logs, rafts, boardwalks, tree stumps, bottles, containers, etc., even though the injury or death complained of was not in the least occasioned by the attracting objects. In view of the foregoing conflict and the fact that, as many courts have declared, a child in his youthful fancy, imagination and ingenuity can make a plaything of almost anything and is attracted by almost everything, the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases.

It is generally true, as defendant contends, that an owner or one in possession and control of premises is under no duty to keep them in any particular state or condition to promote the safety of trespassers or others who come upon them without any invitation, either express or implied. (*Briney* v. *Illinois Central Railroad Co.* 401 Ill. 181; *Darsch* v. *Brown,* 332 Ill. 592.) It is also established that infants, as a general rule, have no greater rights to go upon the land of others than adults, and that their minority of itself imposes no duty upon the occupier of land to expect them or prepare for their safety. (*Burns* v. *City of Chicago,* 338 Ill. 89; *McDermott* v. *Burke,* 256 Ill. 401.) It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. (*Wagner* v. *Kepler,* 411 Ill. 368.) The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child. Whether the lumber pile was sufficiently attractive to entice children into climbing upon it, whether its condition would involve danger from such activity, and whether the contractor should have anticipated the probability of the accident, were matters for determination by the jury. *City of Pekin* v. *McMahon,* 154 Ill. 141.

In *Wolfe* v. *Rehbein,* 123 Conn. 110, 193 Atl. 608, the defendant owned a lot adjoining the house in which the

plaintiff lived. He began to build a house, and piled lumber upon the rear of the lot parallel to the boundary line between his lot and that of the plaintiff. After removal of a portion of the lumber during erection of the house an opening was left in the pile about 12 inches wide and the remaining timbers were insecure and unbalanced. The plaintiff's small child, who was fatally injured while playing on the lumber pile, was found in the opening beneath two planks which had fallen into it. There was some evidence that she and her sister were accustomed to play upon defendant's lot during construction of the house, and that defendant knew they were there every day. In appealing from a judgment upon a verdict for plaintiff, defendant contended that since the child was a trespasser or a licensee, she took defendant's premises as she found them and defendant owed her no duty to keep his premises in safe condition for her use. It was held, however, that where a possessor knows or should know that children are likely to trespass, he is bound to anticipate their presence and refrain from maintaining a condition likely to be dangerous to them because of their propensities to intermeddle and their failure to realize the risk involved. In affirming the judgment for plaintiff the court said: "The jury could reasonably have found that defendant knew that this child was every day upon his lot in the immediate vicinity of this pile of lumber and that he should have realized that, in the condition in which it was left, it involved an unreasonable risk of serious bodily harm which children of such tender age could not be expected to discover or appreciate, and that her death was caused by his failure to perform the duty which, under these circumstances, devolved upon him of taking reasonable precautions to avoid injury to her, even though her status was that of a trespasser." In the case at bar the jury could reasonably have found that the contractor knew or should have known that children would likely be attracted by the lumber pile, and that if

they climbed upon it there would be an unreasonable risk of serious bodily harm.

We conclude the Appellate Court erred in holding that as a matter of law defendants were not guilty of any negligence. It appears from the opinion of the Appellate Court that because of its decision on the questions herein considered, it did not consider and pass upon other assignments of error. The cause must therefore be remanded to that court. The judgment is accordingly reversed and the cause remanded to the Appellate Court with directions to consider the undecided contentions properly presented, and thereupon to either affirm the judgment of the superior court of Cook County or reverse said judgment and remand the cause.

*Reversed and remanded, with directions.*

Mr. JUSTICE HERSHEY, dissenting:

I dissent from that part of the majority opinion pertaining to the defendant lumber company, because I do not believe there is any evidence in the record from which the jury could have reasonably found against this defendant. In my opinion the undisputed facts show that this company did not fail to conform to any standard of conduct which has been established by this court or should now be established.

The facts upon which the jury predicated liability, stated at length in the Appellate Court opinion, are not complicated, nor are they in dispute. Briefly, the evidence shows that after the excavating had been done, the foundation had been poured, and the brick work had advanced to where it was necessary to put in the joists and the floor boards, the owners (Kriegers) notified the contracting company (defendant James Burton Company), who were to do the carpentry. The contracting company then ordered from the lumber company (defendant Malkov Lumber Company, Inc.) the necessary lumber. Pursuant to this

order, the lumber company loaded the lumber on one of its trucks and delivered it to the premises. The lumber was stacked in the order which it would be used by the carpenters, that is, the joists on top and the floor boards underneath. The plaintiff concedes that the lumber was loaded and delivered in accordance with the uniform practice of lumber dealers all over Chicago. The lumber company was not in possession or control of these private premises, nor was it in possession or control of the lumber at the time the plaintiff was injured.

No cases have been cited, nor have I found any, wherein the standard of conduct binding a supplier of lumber has been held to impose upon him an obligation to do any more than was done by the lumber company in this case. In this connection, the following significant points must be considered: (1) The lumber was not "inherently dangerous" to human safety in the sense those terms are ordinarily employed in cases dealing with the liability of a seller to one who may reasonably be expected to be in the vicinity of the chattel's probable use and be endangered thereby. (2) The delivery of the lumber was done pursuant to contract, in a manner directed by the contractor and conformable to the uniform practice of lumber dealers in Chicago. (3) The injured party was a trespasser upon the premises where the lumber was delivered, and at the time of his injury the lumber company was not in possession of the premiss nor did it have any control over the lumber. It is conceded that the lumber company cannot be held liable under any application of the so-called "attractive nuisance" doctrine, inasmuch as it had no possession or control over the premises. Still, to hold the lumber company liable results, in effect, in the extension of the attractive nuisance doctrine, since the foreseeability demanded of the company is held to be much the same as that required of the possessor of the premises. I agree that this defendant had a general duty to act with reference to the plaintiff as

a reasonable person would act under the circumstances; however, the acts of the defendant were not unreasonable and did not cause any unreasonable risks. The injury was not one which the defendant should reasonably have foreseen. To decide otherwise is to hold the defendant to a stricter standard than has heretofore been recognized and which, in the absence of legislation, should not be demanded of it.

The opinion of the majority makes no more definitive or particular statement of the law than a general proposition applicable to all negligence cases, namely, the defendant is required to use reasonable care under the circumstances. Nothing is spelled out relative to establishing the scope of the risk or articulating the standard of care. The following words of Mr. Justice Holmes are pertinent (from The Common Law, pages 111-2): "Finally, any legal standard must, in theory, be capable of being known. When a man has to pay damages, he is supposed to have broken the law, and he is further supposed to have known what the law was. If, now, the ordinary liabilities in tort arise from failure to comply with fixed and uniform standards of external conduct, which every man is presumed and required to know, it is obvious that it ought to be possible, sooner or later, to formulate these standards at least to some extent, and that to do so must at last be the business of the court. It is equally clear that the featureless generality, that the defendant was bound to use such care as a prudent man would do under the circumstances, ought to be continually giving place to the specific one, that he was bound to use this or that precaution under these or those circumstances. The standard which the defendant was bound to come up to was a standard of specific acts or omissions, with reference to the specific circumstances in which he found himself. If in the whole department of unintentional wrongs the court arrived at no further utterance than the question of negligence, and

left every case, without rudder or compass, to the jury, they would simply confess their inability to state a very large part of the law which they required the defendant to know * * *."

In sanctioning liability in this case, the court has imposed upon the defendant a standard which is vague in definition yet strict in application.

Mr. Justice Davis concurs in the foregoing dissent.