ILLINOIS STATE TRUST COMPANY, a Corporation, Guardian of the Estate of Daniel David Land, a Minor, and Arthur Land, Plaintiff-Appellants,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Appellee.

No. 18534.

United States Court of Appeals, Seventh Circuit.

March 10, 1971.

Rehearing Denied April 5, 1971.

William B. Starnes, Karns, Starnes, Nester & Stegmeyer, Belleville, Ill., for plaintiffs-appellants.

Norman J. Gundlach, Roberts, Gundlach & Lee, Belleville, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, CUMMINGS and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

This is an appeal from the granting of defendant's motion for a directed verdict at the close of plaintiffs' evidence and the judgment entered thereon in a personal injury action removed to the district court pursuant to 28 U.S.C. § 1441(a) on the ground of diversity of citizenship, the jurisdictional amount-in-controversy requirement having been met. The cause of action arose out of an accident which occurred at the crossing of a public road over defendant's railroad right-of-way in Cahokia, Illinois, in which a young boy fell under the wheels of a railroad car while attempting to "hop a ride" on defendant's train, suffering serious injuries.*

The facts before the trial court upon which the directed verdict was predicated are as follows. On March 30, 1969, David Land, then seven years of age, and Jimmy Bell, his friend of the same age, decided while playing together to ride Jimmy's bicycle to a service station in Cahokia "to get a drink." The two boys then set out for the Cargill Road railroad crossing nearby "to hunt for

---

* The complaint is in two counts. Count 1 asserts a claim by Illinois State Trust Company as guardian of the estate of Daniel David Land, a minor; Count 2 asserts a claim by the father of Daniel David Land for medical expenses.

flares"—that is, to search the tracks for the red pyrotechnic flares sometimes used and carried by railroad men for signalling purposes. The boys were accompanied by "Snoopy," the Land family's dog. Jimmy hid his bicycle in the brush, and the two boys walked to the crossing. While they were drawing near to the crossing, defendant's train came to the crossing and stopped for about a minute so that a switch could be operated by the conductor to properly align the tracks for proceeding in the intended direction. The train then started up again. The two boys were apparently unobserved by any of the train crewmen at that time, although the engineer testified he saw one boy and a dog some distance from the tracks after the train was entirely past the crossing. As the train was passing through the crossing, Jimmy Bell climbed on a ladder at the rear of one boxcar. David Land then attempted to climb on a ladder at the front of the car immediately behind the one Jimmy was riding, but, as David attempted to board the train, "Snoopy," the dog, barked and jumped at the boy causing him to trip. David fell beneath a railroad car within a few feet of the crossing and suffered serious injuries to his left leg and right foot.

Also before the court was testimony that children had found partially burned flares along the tracks and had been given flares by railroad crewmen from time to time. Several children testified that if they stood near defendant's tracks at the crossing and elsewhere and called to the crewmen to throw them some flares, their efforts were rewarded more often than not by compliance with their requests. They further testified that the flares were sometimes thrown to them from the engine but more often came from the caboose. There was also testimony that children had hopped rides on trains at the crossing and elsewhere. However, there was no testimony that any of the crewmen on the train involved in this accident had ever given away flares or observed children hopping rides on trains in or near Cahokia.

Two crewmen testified that they had observed children playing in the vicinity of the Cargill Road crossing—indeed, the switchman had reported that fact to his supervisor—but there is nothing in the record to indicate that the railroad had knowledge of any fact which would indicate that the Cargill Road crossing was particularly dangerous or that children were playing on the tracks or dangerously close thereto.

Plaintiffs raise two issues on this appeal: (1) did the district court err in denying their motion to remand the cause to the state court from which it was removed and (2) did the district court err in granting defendant's motion for a directed verdict, considering the foregoing evidence? We affirm the decision of the district court as to both issues.

I

Plaintiffs contend that the district court should have granted their motion to remand the action to the state court from which it was removed because diversity of citizenship between the parties was lacking; hence the district court was without subject matter jurisdiction. This argument is based on the theory that defendant was a citizen of Illinois for diversity purposes as are all of the plaintiffs. We agree with the district court that the defendant is a citizen of Missouri and that the motion to remand was without merit.

Pursuant to 28 U.S.C. § 1332(c), a corporation, for purposes of diversity jurisdiction, is a citizen of both the state of its incorporation and the state which is the situs of its principal place of business. The evidence shows that the defendant is a Missouri corporation, that its general offices and headquarters are located in Missouri, that its shareholders and board of directors hold all of their meetings in Missouri, that the vast majority of its officers have their offices in Missouri, that all its basic corporate records are kept in Missouri, that all its tax returns are prepared in and filed from Missouri, and that all its

banking is conducted in Missouri. It is thus clear that Missouri is the only state of defendant's citizenship, despite the defendant's extensive operations in Illinois. Celanese Corp. of America v. Vandalia Warehouse Corp., 424 F.2d 1176 (7th Cir. 1970); Sabo v. Standard Oil Co., 295 F.2d 893 (7th Cir. 1961).

## II

■■ Plaintiffs further contend that the trial court's direction of the verdict against them was erroneous. Although there is disagreement among the circuits as to whether a federal standard for direction of verdicts or a state standard applies in diversity cases, e. g., Boeing Co. v. Shipman, 411 F.2d 365, 368 n. 2 (5th Cir. 1969), it is settled that in this circuit the applicable state standard applies. Wieloch v. Rogers Cartage Co., 290 F.2d 235, 237–238 (7th Cir. 1961). It is undisputed that Illinois law governs this cause of action, and the Illinois standard for direction of verdicts has recently been clarified. As the Illinois Supreme Court stated in Pedrick v. Peoria & E. R. R., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–514 (1967):

> In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

Our inquiry thus is directed to a determination of whether a verdict for plaintiffs based on the evidence stated above "viewed in its aspect most favorable to [plaintiffs] * * * could ever stand." *Id.*

■ The claims of the plaintiffs in the instant case are in the nature of what are usually characterized as attractive nuisance cases. However, as the Illinois Supreme Court has recognized:

> The naming or labeling of a certain set of facts as being an "attractive nuisance" case or a "turntable" case

has often led to undesirable conclusions. The inclination is then to find a *stare decisis* pigeonhole or category. The difficulty in such a procedure is that too often the result of such a search is the reaching of irreconcilable conclusions. Kahn v. James Burton Co., 5 Ill.2d 614, 624, 126 N.E.2d 836, 841 (1955).

We must, therefore, adhere to the instruction of the Illinois court that "the only proper basis for decision in such cases dealing with personal injuries to children are [*sic*] the customary rules of ordinary negligence cases." *Id.* The court further stated:

> [W]here the owner or person in possession [of land] knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the situation is slight compared to the risk to the children * * * there is a duty upon the owner or other person in control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. *Id.* at 625, 126 N. E.2d at 842.

Applying these principles to the facts in this case we agree with the district court that, construing the evidence in the manner most favorable to the plaintiffs, no verdict for plaintiffs could stand based on the submitted evidence.

Principal among the reasons which have led to this conclusion is the fact that we have not discovered any post-*Kahn* Illinois case which has held an owner or possessor of land liable where the immediate cause of the injury to a child has not been either the attracting agency itself or some negligence chargeable to the defendant other than the negligence inherent in the creation or tolerance of the attraction which result-

ed in the child's presence. Indeed, the language of the decision of the Illinois Appellate Court in Henry v. Robert Kettell Constr. Corp., 44 Ill.App.2d 356, 194 N.E.2d 535 (2d Dist. 1963), expressly recognized the necessity of more than mere attraction of and injury to a child to impose liability on the owner or possessor of land therefor when it said:

> Realistically the doctrine of "attractive nuisance" serves only one purpose and that is in regard to the status of the infant on the premises. Once an infant of tender years because of his immature judgment and inability to appreciate certain conditions is attracted and allured to the premises, he is no longer a trespasser but is to be regarded as an invitee. * * * In such case, there is a duty upon the owner or other person in possession and control of the premises to which the child is allured to exercise due care so as not to *negligently* injure him while he is upon the premises. *Id.* at 359, 194 N.E.2d at 537 (emphasis added).

With this understanding of the law of Illinois, we are unable to identify any negligence of defendant other than the obvious negligence in not preventing its employees from throwing flares to children along the right-of-way. It is also clear that the attracting agency— the giving away of flares—did not proximately cause the injuries here at issue as would have been the situation if the child had been injured by the flares themselves or struck on or near the tracks while seeking or obtaining flares.

A requirement that for liability to attach there must be negligence beyond the mere creation or tolerance of a dangerous condition attractive to children where the source of the attraction is not also the source of the injury is entirely consistent with the customary rules of negligence law. In reality such a requirement is nothing more than the usual requirement that there be proximate causation for recovery of damages to follow. The absence of a requirement of proximate causation would have the logical result of making defendant an insurer as to injuries sustained by children without regard to who or what actually caused the injury. It is clear that such is not the law in Illinois.

In addition, the situs of the accident here at issue demonstrates the enormous burden which would be placed upon railroads if the defendant were held liable in this instance. The only methods of insuring that such injuries would not recur would be to fence the right-of-way at crossings where there is any likelihood of children's presence or to construct an overpass or underpass or place a guard at all such crossings. We do not believe Illinois law imposes any such requirement. Moreover, on the basis of the testimony before the trial court, the practice of hopping rides on defendant's trains was by no means confined to the Cargill Road crossing, and to effectively foreclose such a practice would therefore require fencing or patrolling of defendant's entire right-of-way.

Finally, the actions of the two boys at the crossing indicate that they were in the vicinity of the railroad tracks when the accident occurred not to obtain flares but to hop a train. If their presence at the Cargill Road crossing at any prior time related to obtaining flares, that mission had clearly been abandoned by the time they placed themselves in danger of the accident which ultimately resulted. Moreover, their actions were inconsistent with a desire to obtain flares. This is so because not only was no request made for flares to be thrown to them, but also they hopped the train before the caboose (which, by the testimony of plaintiffs' witnesses, was the usual source of the flares) had reached them. There is authority in the Illinois case law for the proposition that, if a child has lost interest in the attracting agency and places himself in danger by undertaking another pastime which leads to injury, such a change in mission bars recovery as a matter of law. *See*

Briney v. Illinois Cent. R. R., 401 Ill. 181, 81 N.E.2d 866 (1948) (cited in Kahn v. James Burton Co., *supra*, 5 Ill.2d at 625, 126 N.E.2d at 841).

The judgment of the district court is affirmed.