DEBORAH A. SELVY *et al.*, Plaintiffs-Appellants, v. HERBERT A. BEIGEL *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—95—2317

Opinion filed September 12, 1996.

Theodore A. Livingston, Ira J. Belcove, and Andrew S. Marovitz, all of Mayer, Brown & Platt, and Maria Woltjen, of Chicago Lawyers' Committee for Civil Rights Under Law, both of Chicago, for appellants.

Egan & Trapp, of Chicago (Robert A. Egan and Gregory P. Gerner, of counsel), for appellee Keyway Investments, Inc.

JUSTICE THEIS delivered the opinion of the court:

The plaintiffs, Deborah and Jessie Selvy and their 12 children (the Selvys), appeal the trial court's order granting the motion for summary judgment of defendant Keyway Investments, Inc. (Keyway). The Selvys sued Keyway, owners of the building in which the Selvys resided, for damages arising from the Selvys' exposure to lead-based paint. Keyway filed its motion for summary judgment, claiming that plaintiffs could not establish a landlord/tenant relationship with Keyway, an essential element of their case. The trial court agreed and granted Keyway's motion. On appeal, plaintiffs argue that: (1) they have raised a genuine issue of material fact as to whether a

landlord/tenant relationship existed; (2) they need not establish the existence of such a relationship to support all of their causes of action; and (3) the trial court improperly vacated its order imposing sanctions upon Keyway. We disagree and affirm.

Plaintiffs resided in the third-floor apartment of a building located at 2452 West North Avenue in Chicago from 1983 through 1990. When the plaintiffs first moved into the apartment, the Sidney Missner Trust (the Trust) owned the building. During the Trust's ownership of the property, the City of Chicago and plaintiffs repeatedly informed the Trust and its agent, Herbert A. Beigel (Beigel), of the illegal levels of lead-based paint present in the building. The Trust failed to remedy the problem, and the Selvy children were diagnosed with and treated for lead poisoning.

The Trust was delinquent in paying real estate taxes on the property. In June of 1989, Keyway obtained an order directing issuance of the tax deed for the apartment building and other properties owned by the Trust. Keyway recorded the deed on August 4, 1989. Nevertheless, plaintiffs claimed that they continued to pay rent to Beigel. Beigel never informed plaintiffs of the change in ownership and held himself out as the owner's agent. Plaintiffs remained in the building until August of 1990, without entering into an oral or written agreement with Keyway.

In July of 1990, plaintiffs filed their initial complaint against Keyway and other defendants, seeking both an injunction and damages stemming from their exposure to lead-based paint. The complaint alleged that Keyway violated the Chicago Residential Landlords and Tenants Ordinance (the Ordinance), breached their implied warranty of habitability, were guilty of negligence and engaged in willful and wanton misconduct. See Chicago Municipal Code § 193.1—3 (1989).

In response, Keyway filed a motion for summary judgment and motions to strike and dismiss plaintiffs' complaint. In its motions, Keyway claimed that plaintiffs' action was barred by the doctrine of *res judicata*. Keyway argued that the order granting Keyway the tax deed for the property extinguished the Selvys' prior leasehold and therefore resolved the present dispute.

In ruling on Keyway's motions, the trial court first noted that Keyway's summary judgment motion was withdrawn without prejudice. Further, the trial court rejected Keyway's *res judicata* arguments. As such, the court denied Keyway's motions to strike and dismiss, on the condition that plaintiffs amend their complaint to correct certain technical errors. Plaintiffs amended their complaint in compliance with the trial court's orders and added an additional count of retaliatory eviction under the Ordinance.

Keyway filed both an answer and another motion for summary judgment in response to plaintiffs' amended complaint. In its answer, Keyway asserted a number of affirmative defenses, including its previously rejected *res judicata* argument. Plaintiffs filed a motion for sanctions, noting that the trial court had repeatedly rejected Keyway's *res judicata* arguments. Judge Cox granted plaintiffs' motion for sanctions.

In response to Keyway's second summary judgment motion, plaintiffs claimed that the evidence established that Keyway knew of the Selvys' presence in the apartment. Keyway's sole director, officer and shareholder, Steven Dobrofsky (Dobrofsky), testified at his deposition that someone from Keyway may have gone out to the building in which the Selvys resided shortly after obtaining the deed and found that the apartment was locked from the inside. In September of 1989, the City of Chicago filed suit against Keyway and other defendants to force them to abate the lead-based paint contained in certain properties.

Furthermore, Dobrofsky testified that beginning in June of 1989, Keyway would have paid any utility bills relating to the recently obtained properties. Specifically, Keyway paid a $372.59 water bill to the City of Chicago which covered water service for the Selvys' apartment building and the adjoining properties in June of 1990. Dobrofsky stated that he never knew the Selvys occupied the apartment, though he acknowledged that Keyway sometimes allowed tenants to remain in buildings without paying rent to fend off vandalism.

Judge Maddux ruled on Keyway's motion for summary judgment. Judge Maddux granted Keyway's motion as to all of plaintiffs' claims, finding that plaintiffs could not establish the existence of a landlord/tenant relationship. Keyway then filed a motion before Judge Cox to vacate her grant of plaintiffs' request for sanctions. In light of Judge Maddux's ruling, Judge Cox granted Keyway's motion to vacate the sanctions. Plaintiffs appeal both Judge Maddux's and Judge Cox's rulings.

On appeal, plaintiffs argue that: (1) they can establish a landlord/tenant relationship under the plain language of the Ordinance; (2) an implied contractual relationship existed between the parties; and (3) a consensual landlord/tenant relationship existed between the parties. In addition, plaintiffs claim that Keyway breached an independent duty of care to the Selvy children. We note that plaintiffs failed to make any reference to their retaliatory eviction argument in their opening brief. Accordingly, this argument is waived for purposes of this appeal. See 134 Ill. 2d R. 341(e)(7).

Summary judgment is appropriate where, after drawing all rea-

sonable inferences in favor of the nonmoving party, no genuine issue of material fact exists. *First State Bank v. Busse*, 126 Ill. App. 3d 577, 467 N.E.2d 1061 (1984). We review the trial court's order granting defendants' motion under a *de novo* standard. *Demos v. National Bank*, 209 Ill. App. 3d 655, 567 N.E.2d 1083 (1991).

Plaintiffs contend that in failing to abate the lead paint problem in the apartment, Keyway breached its duty under the Ordinance. As the name suggests, the Ordinance only applies to landlords and their tenants. In the instant case, we find that there is no landlord/tenant relationship between the parties.

■ The Ordinance defines a tenant as "a person entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others." Chicago Municipal Code § 193.1—3(h) (1989). We note that Keyway's tax deed served to extinguish any prior lease agreements plaintiffs had with the previous owners. See *City of Bloomington v. John Allan Co.*, 18 Ill. App. 3d 569, 310 N.E.2d 437 (1974). The Revenue Act provides that the holder of a tax deed takes merchantable title, free and clear of any prior liens. See Ill. Rev. Stat. 1987, ch. 120, par. 747. Therefore, plaintiffs' rental agreements with previous owners are irrelevant to our inquiry of whether a landlord/tenant relationship existed with the Keyway defendants.

■ In addition, there is no evidence that a written or oral agreement or an approved subtenancy agreement existed between the parties. Despite this, plaintiffs persist and argue that they are tenants at sufferance. Plaintiffs cite cases which hold that "[a] tenant who remains in possession after his lease expires becomes a tenant at sufferance." *General Parking Corp. v. Kimmel*, 79 Ill. App. 3d 883, 886, 398 N.E.2d 1104, 1107 (1979). While we accept this general proposition as true, we find that the instant case falls outside of the scope of the traditional tenancy at sufferance situation.

Generally, tenancy at sufferance refers to the relationship between a landlord and tenant after the expiration of their lease. See *Troccoli v. L&B Products of Illinois, Inc.*, 189 Ill. App. 3d 319, 545 N.E.2d 219 (1989). Under this theory, courts have been willing to view the relationship between the ex-landlord and ex-tenant as if the lease were still in existence, where the landlord permitted the relationship to continue by failing to seize possession of the property from the tenant.

We find that the theory of tenancy at sufferance has no application in the instant case, as there was no prior relationship between the parties. There was no oral or written agreement between the parties. Prior to the suit, neither of the parties had contacted the other,

nor did plaintiffs pay Keyway rent. Furthermore, we decline to extend the theory of tenancy at sufferance based upon the evidence in this case. A review of the evidence demonstrates the weakness of plaintiffs' contention that there was a landlord/tenant relationship between the parties, based upon Keyway's alleged knowledge of the Selvys' residence.

While plaintiffs need not prove their case in order to withstand Keyway's motion for summary judgment, they must present some factual basis that would entitle them to judgment. See *Fuentes v. Lear Siegler, Inc.*, 174 Ill. App. 3d 864, 529 N.E.2d 40 (1988). In reviewing this evidence, we note that we are not to draw every conceivable inference in plaintiffs' favor but only those inferences which are "reasonable." *Federal Insurance Co. v. Turner Construction Co.*, 277 Ill. App. 3d 262, 266, 660 N.E.2d 127, 130 (1995). Plaintiffs rely primarily upon three pieces of evidence to support their contention that Keyway knew of their presence in the apartment.

■ Plaintiffs first argue that Keyway's payment of a water bill in June of 1990 is evidence of Keyway's knowledge that the Selvys were living in the apartment. However, we decline to find that this creates a genuine issue of material fact. Plaintiffs' argument requires this court to infer not only that defendants knew that they were ensuring water service to that specific apartment unit, but also that the water was being used for residential purposes by tenants occupying the apartment. We find that such an inference is not reasonable.

■ Similarly, plaintiffs claim that the suit brought by the City of Chicago served as adequate notice of their presence in the apartment. The complaint did not include an allegation that the apartment was occupied or that there were children present. Rather, the complaint alleged that there was lead-based paint that had to be abated on the premises of 2452 West North Avenue in Chicago. The complaint also identified the property through a legal description. Keyway's tax deed, however, lists both a different address, 2448 West North Avenue, and a different legal description to identify the property Keyway obtained from the Trust. It also should be noted that the City never pursued this action against Keyway and Keyway denies ever receiving the notice of the City's suit.

■ Finally, plaintiffs argue that a statement made by Dobrofsky indicates that Keyway knew of the Selvys' presence. Specifically, when Dobrofsky was asked in his deposition whether he ever went out to the Selvys' apartment and found the door locked from the inside, Dobrofsky responded, "No. I don't think—I never went out to the property for that. I may have sent somebody out." Even after drawing all reasonable inferences in plaintiffs' favor, we find that

this evidence does not raise a genuine issue of material fact as to whether Keyway knew that the Selvys were residing in its apartment building. Rather, the deposition testimony from Keyway's agents is full of clear and unequivocal denials that Keyway knew the Selvys were in the apartment. The Selvys never had any communication with Keyway and never paid Keyway rent. We agree with the trial court that the evidence presented does not support plaintiffs' contention that a landlord/tenant relationship existed between the parties.

■ Next, plaintiffs argue that Keyway impliedly consented to their possession of the apartment by allowing plaintiffs to remain, thus forming an implied contract. Plaintiffs contend that their occupancy of the building served as consideration because Keyway admitted that, in some instances, occupancy might deter vandalism.

While we acknowledge that implied contracts may be valid at law (see *Greenview Ag Center, Inc. v. Yetter Manufacturing Co.*, 246 Ill. App. 3d 132, 615 N.E.2d 395 (1993)), the facts in the instant case fail to demonstrate that Keyway impliedly assented to plaintiffs' occupancy of the apartment. Rather, we agree with the trial court that the evidence does not support plaintiffs' contention that Keyway knew plaintiffs were present in the apartment. Unlike *Greenview*, there was no long-standing relationship involving the exchange of services, accompanied by an unspoken agreement between the parties.

■ Similarly, we reject plaintiffs' contention that their presence in the apartment served as adequate consideration. Plaintiffs have not demonstrated that their mere occupancy satisfies the contractual requirement of consideration. While Dobrofsky stated that in some circumstances Keyway permitted tenants to remain in recently purchased buildings, he denied that this occurred in the instant case. In the absence of competent evidence that Keyway knew of plaintiffs' presence in the apartment, we refuse to conclude that plaintiffs' presence could serve as consideration for Keyway's permission to remain in the apartment. We find plaintiffs' argument that an implied contractual relationship existed between the parties to be without merit.

■ Plaintiffs then argue that a consensual landlord/tenant relationship existed between the parties, citing *Woodyatt v. Connell*, 38 Ill. App. 475 (1890). We find that *Woodyatt* fails to support plaintiffs' position. *Woodyatt* involved a wife's occupation of marital property after her husband abandoned her. Of critical importance was the prior relationship between the parties, knowledge of the wife's presence, and her husband's concurrence in her occupation of the land by

failing to take steps to prevent her from retaining the property. In the instant case, evidence of a prior relationship between the parties and of Keyway's knowledge and concurrence in the Selvys' occupation of the property is lacking. Accordingly, plaintiffs' theory must fail.

In the alternative, plaintiffs argue that the landlord/tenant relationship is not essential to their case against defendants. Rather, plaintiffs claim that Keyway, as owner of the property, had a duty to protect the Selvys from dangerous conditions "even if they were trespassers." Plaintiffs acknowledge that, in Illinois, landowners owe no duty to maintain their premises for trespassers. See *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 126 N.E.2d 836 (1955). Furthermore, in cases involving personal injuries to children, we no longer rely on the attractive nuisance theory. Rather, ordinary rules of negligence apply. *Kahn*, 5 Ill. 2d 614, 126 N.E.2d 836.

However, plaintiffs rely on the exception to this rule created in *Kahn*. In *Kahn*, the supreme court found that owners must exercise due care to remedy a dangerous condition to protect children where: (1) the owner knew or should have known that children habitually frequented the property; (2) a dangerous condition was present; (3) the dangerous condition was likely to injure children because they are incapable of appreciating the risks; and (4) the expense of remedying the condition was slight when compared to the risk. 5 Ill. 2d 614, 126 N.E.2d 836.

We find that plaintiffs' *Kahn* argument suffers from the same infirmity as all of plaintiffs' arguments: the absence of evidence establishing that Keyway knew or should have known that there were children on the premises. Therefore, we find that Keyway did not have a duty to protect the Selvy children against exposure to lead-based paint.

Plaintiffs also challenge Judge Cox's ruling vacating her previous award of sanctions against Keyway. We find that Judge Cox's ruling vacating the award of sanctions complied with Supreme Court Rule 137 as it specified her reasons for doing so. 134 Ill. 2d R. 137; *In re Marriage of Adler*, 271 Ill. App. 3d 469, 648 N.E.2d 953 (1995). In addition, Judge Cox's ruling was informed, based upon legitimate and relevant reasons, and followed logically from the reasons stated. See *Olsen v. Staniak*, 260 Ill. App. 3d 856, 632 N.E.2d 168 (1994). Therefore, we find that the trial court did not abuse its discretion in deciding that sanctions were not warranted.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.