FOURTH DIVISION
 September 12, 1996

No. 1-95-2317

DEBORAH A. SELVY, JESSIE SELVY, JR., )
JESSIE SELVY, III, and SAMUEL B. SELVY, )
 )
 and )
 ) Appeal from
CARY R. SELVY, CHANTA M. SELVY, DENARD ) the Circuit Court
R. SELVY, ELIJAH V. SELVY, IRVING L. ) of Cook County.
SELVY, KENNETH L. SELVY, LARNELL N. )
SELVY, MICHAEL R. SELVY, RICKY A. SELVY, )
and SHANTIL T. SELVY, by Their Next )
Friends, DEBORAH A. SELVY and JESSIE ) No. 90-CH-07362
SELVY, JR., )
 )
 Plaintiffs-Appellants, )
 ) Honorable
 v. ) William Maddux,
 ) Jacqueline P. Cox,
HERBERT A. BEIGEL, KEYWAY INVESTMENTS, ) Judges Presiding.
INC., SIDNEY D. MISSNER, and SIDNEY D. )
MISSNER TRUST NO. 244858, )
 )
 Defendants-Appellees. )

 JUSTICE THEIS delivered the opinion of the court:
 
 The plaintiffs, Deborah and Jessie Selvy and their 12 children
(the Selvys), appeal the trial court's order granting the motion for
summary judgment of defendant Keyway Investments, Inc. (Keyway). The
Selvys sued Keyway, owners of the building in which the Selvys
resided, for damages arising from the Selvys' exposure to lead-based
paint. Keyway filed its motion for summary judgment, claiming that
plaintiffs could not establish a landlord/tenant relationship with
Keyway, an essential element of their case. The trial court agreed
and granted Keyway's motion. On appeal, plaintiffs argue that: (1)
they have raised a genuine issue of material fact as to whether a
landlord/tenant relationship existed; (2) they need not establish the
existence of such a relationship to support all of their causes of
action; and (3) the trial court improperly vacated its order imposing
sanctions upon Keyway. We disagree and affirm.
 Plaintiffs resided in the third-floor apartment of a building,
located at 2452 West North Avenue in Chicago, from 1983 through 1990. 
When the plaintiffs first moved into the apartment, the Sidney Missner
Trust (the Trust) owned the building. During the Trust's ownership of
the property, the City of Chicago and plaintiffs repeatedly informed
the Trust and its agent, Herbert A. Beigel (Beigel), of the illegal
levels of lead-based paint present in the building. The Trust failed
to remedy the problem and the Selvy children were diagnosed with and
treated for lead poisoning. 
 The Trust was delinquent in paying real estate taxes on the
property. In June of 1989, Keyway obtained an order directing
issuance of the tax deed for the apartment building and other
properties owned by the Trust. Keyway recorded the deed on August 4,
1989. Nevertheless, plaintiffs claimed that they continued to pay
rent to Beigel. Beigel never informed plaintiffs of the change in
ownership and held himself out as the owner's agent. Plaintiffs
remained in the building until August of 1990, without entering into
an oral or written agreement with Keyway. 
 In July of 1990, plaintiffs filed their initial complaint against
Keyway and other defendants, seeking both an injunction and damages
stemming from their exposure to lead-based paint. The complaint
alleged that Keyway violated the Chicago Residential Landlords and
Tenants Ordinance (the Ordinance), breached their implied warranty of
habitability, were guilty of negligence and engaged in willful and
wanton misconduct. See Chicago Municipal Code 193.1-3 (1989). 
 In response, Keyway filed a motion for summary judgment, and
motions to strike and dismiss plaintiffs' complaint. In its motions,
Keyway claimed that plaintiffs' action was barred by the doctrine of
res judicata. Keyway argued that the order granting Keyway the tax
deed for the property extinguished the Selvys' prior leasehold and
therefore resolved the present dispute.
 In ruling on Keyway's motions, the trial court first noted that
Keyway's summary judgment motion was withdrawn without prejudice. 
Further, the trial court rejected Keyway's res judicata arguments. As
such, the court denied Keyway's motions to strike and dismiss, on the
condition that plaintiffs amend their complaint to correct certain
technical errors. Plaintiffs amended their complaint in compliance
with the trial court's orders and added an additional count of
retaliatory eviction under the Ordinance.
 Keyway filed both an answer and another motion for summary
judgment in response to plaintiffs' amended complaint. In their
answer, Keyway asserted a number of affirmative defenses, including
their previously rejected res judicata argument. Plaintiffs filed a
motion for sanctions, noting that the trial court had repeatedly
rejected Keyway's res judicata arguments. Judge Cox granted
plaintiffs' motion for sanctions.
 In response to Keyway's second summary judgment motion,
plaintiffs claimed that the evidence established that Keyway knew of
the Selvys' presence in the apartment. Keyway's sole director,
officer and shareholder, Steven Dobrofsky (Dobrofsky), testified at
his deposition that someone from Keyway may have gone out to the
building in which the Selvys resided shortly after obtaining the deed
and found that the apartment was locked from the inside. In September
of 1989, the City of Chicago filed suit against Keyway and other
defendants to force them to abate the lead-based paint contained in
certain properties. 
 Furthermore, Dobrofsky testified that beginning in June of 1989,
Keyway would have paid any utility bills relating to the recently
obtained properties. Specifically, Keyway paid a $372.59 water bill
to the City of Chicago which covered water service for the Selvys'
apartment building and the adjoining properties in June of 1990. 
Dobrofsky stated that he never knew the Selvys occupied the apartment,
though he acknowledged that Keyway sometimes allowed tenants to remain
in buildings without paying rent to fend off vandalism.
 Judge Maddux ruled on Keyway's motion for summary judgment. 
Judge Maddux granted Keyway's motion as to all of plaintiffs' claims,
finding that plaintiffs could not establish the existence of a
landlord/tenant relationship. Keyway then filed a motion before Judge
Cox to vacate her grant of plaintiffs' request for sanctions. In
light of Judge Maddux's ruling, Judge Cox granted Keyway's motion to
vacate the sanctions. Plaintiffs appeal both Judge Maddux and Judge
Cox's rulings.
 On appeal, plaintiffs argue that: (1) they can establish a
landlord/tenant relationship under the plain language of the
Ordinance; (2) an implied contractual relationship existed between the
parties; and (3) a consensual landlord/tenant relationship existed
between the parties. In addition, plaintiffs claim that Keyway
breached an independent duty of care to the Selvy children. We note
that plaintiffs failed to make any reference to their retaliatory
eviction argument in their opening brief. Accordingly, this argument
is waived for purposes of this appeal. See 134 Ill. 2d R. 341(e)(7).
 Summary judgment is appropriate where, after drawing all
reasonable inferences in favor of the nonmoving party, no genuine
issue of material fact exists. First State Bank of Round Lake v.
Busse, 126 Ill. App. 3d 577, 467 N.E.2d 1061 (1984). We review the
trial court's order granting defendants' motion under a de novo
standard. Demos v. National Bank of Greece, 209 Ill. App. 3d 655, 567
N.E.2d 1083 (1991). 
 Plaintiffs contend that in failing to abate the lead paint
problem in the apartment, Keyway breached its duty under the
Ordinance. As the name suggests, the Ordinance only applies to
landlords and their tenants. In the instant case, we find that there
is no landlord/ tenant relationship between the parties. 
 The Ordinance defines a tenant as "a person entitled by written
or oral agreement, subtenancy approved by the landlord or by
sufferance, to occupy a dwelling unit to the exclusion of others." 
Chicago Municipal Code 193.1-3(h) (1989). We note that Keyway's tax
deed served to extinguish any prior lease agreements plaintiffs had
with the previous owners. See City of Bloomington v. John Allan Co.,
18 Ill. App. 3d 569, 310 N.E.2d 437 (1974). The Revenue Act provides
that the holder of a tax deed takes merchantable title, free and clear
of any prior liens. See Ill. Rev. Stat. 1987, ch. 120, par. 747. 
Therefore, plaintiffs' rental agreements with previous owners are
irrelevant to our inquiry of whether a landlord/tenant relationship
existed with the Keyway defendants. 
 In addition, there is no evidence that a written or oral
agreement or an approved subtenancy agreement existed between the
parties. Despite this, plaintiffs persist and argue that they are
tenants at sufferance. Plaintiffs cite cases which hold that "[a]
tenant who remains in possession after his lease expires becomes a
tenant at sufferance ***." General Parking Corp. v. Kimmel, 79 Ill.
App. 3d 883, 886, 398 N.E.2d 1104, 1107 (1979). While we accept this
general proposition as true, we find that the instant case falls
outside of the scope of the traditional tenancy at sufferance
situation. 
 Generally, tenancy at sufferance refers to the relationship
between a landlord and tenant after the expiration of their lease. 
See Troccoli v. L&B Products of Illinois, Inc., 189 Ill. App. 3d 319,
545 N.E.2d 219 (1989). Under this theory, courts have been willing to
view the relationship between the ex-landlord and ex-tenant as if the
lease were still in existence, where the landlord permitted the
relationship to continue by failing to seize possession of the
property from the tenant. 
 We find that the theory of tenancy at sufferance has no
application in the instant case, as there was no prior relationship
between the parties. There was no oral or written agreement between
the parties. Prior to the suit, neither of the parties had contacted
the other, nor did plaintiffs pay Keyway rent. Furthermore, we
decline to extend the theory of tenancy at sufferance based upon the
evidence in this case. A review of the evidence demonstrates the
weakness of plaintiffs' contention that there was a landlord/tenant
relationship between the parties, based upon Keyway's alleged
knowledge of the Selvys' residence.
 While plaintiffs need not prove their case in order to withstand
Keyway's motion for summary judgment, they must present some factual
basis that would entitle them to judgment. See Fuentes v. Lear
Siegler, Inc., 174 Ill. App. 3d 864, 529 N.E.2d 40 (1988). In
reviewing this evidence, we note that we are not to draw every
conceivable inference in plaintiffs' favor but only those inferences
which are "reasonable." Federal Insurance Co. v. Turner Construction
Co., 277 Ill. App. 3d 262, 266, 660 N.E.2d 127, 130 (1995). 
Plaintiffs rely primarily upon three pieces of evidence to support
their contention that Keyway knew of their presence in the apartment. 
 Plaintiffs first argue that Keyway's payment of a water bill in
June of 1990 is evidence of Keyway's knowledge that the Selvys were
living in the apartment. However, we decline to find that this
creates a genuine issue of material fact. Plaintiffs' argument
requires this court to infer not only that defendants knew that they
were ensuring water service to that specific apartment unit, but also
that the water was being used for residential purposes by tenants
occupying the apartment. We find that such an inference is not
reasonable.
 Similarly, plaintiffs claim that the suit brought by the City of
Chicago served as adequate notice of their presence in the apartment. 
The complaint did not include an allegation that the apartment was
occupied or that there were children present. Rather, the complaint
alleged that there was lead-based paint which had to be abated on the
premises of 2452 West North Avenue in Chicago. The complaint also
identified the property through a legal description. Keyway's tax
deed, however, lists both a different address, 2448 West North Avenue,
and a different legal description to identify the property Keyway
obtained from the Trust. It also should be noted that the City never
pursued this action against Keyway and Keyway denies ever receiving
the notice of the City's suit. 
 Finally, plaintiffs argue that a statement made by Dobrofsky
indicates that Keyway knew of the Selvys' presence. Specifically,
when Dobrofsky was asked in his deposition whether he ever went out to
the Selvys' apartment and found the door locked from the inside,
Dobrofsky responded, "No. I don't think -- I never went out to the
property for that. I may have sent somebody out." Even after drawing
all reasonable inferences in plaintiffs' favor, we find that this
evidence does not raise a genuine issue of material fact as to whether
Keyway knew that the Selvys were residing in their apartment building. 
Rather, the deposition testimony from Keyway's agents is full of clear
and unequivocal denials that Keyway knew the Selvys were in the
apartment. The Selvys never had any communication with Keyway and
never paid Keyway rent. We agree with the trial court that the
evidence presented does not support plaintiffs' contention that a
landlord/tenant relationship existed between the parties. 
 Next, plaintiffs argue that Keyway impliedly consented to their
possession of the apartment by allowing plaintiffs to remain, thus
forming an implied contract. Plaintiffs contend that their occupancy
of the building served as consideration because Keyway admitted that,
in some instances, occupancy might deter vandalism. 
 While we acknowledge that implied contracts may be valid at law
(see Greenview Ag Center, Inc. v. Yetter Mfg. Co., 246 Ill. App. 3d
132, 615 N.E.2d 395 (1993)), the facts in the instant case fail to
demonstrate that Keyway impliedly assented to plaintiffs' occupancy of
the apartment. Rather, we agree with the trial court that the
evidence does not support plaintiffs' contention that Keyway knew
plaintiffs were present in the apartment. Unlike Greenview, there was
no long-standing relationship involving the exchange of services,
accompanied by an unspoken agreement between the parties. 
 Similarly, we reject plaintiffs' contention that their presence
in the apartment served as adequate consideration. Plaintiffs have
not demonstrated that their mere occupancy satisfies the contractual
requirement of consideration. While Dobrofsky stated that in some
circumstances Keyway permitted tenants to remain in recently purchased
buildings, he denied that this occurred in the instant case. In the
absence of competent evidence that Keyway knew of plaintiffs' presence
in the apartment, we refuse to conclude that plaintiffs' presence
could serve as consideration for Keyway's permission to remain in the
apartment. We find that plaintiffs' argument that an implied
contractual relationship existed between the parties to be without
merit.
 Plaintiffs then argue that a consensual landlord/tenant
relationship existed between the parties, citing Woodyatt v. Connell,
38 Ill. App. 475 (1890). We find that Woodyatt fails to support
plaintiffs' position. Woodyatt involved a wife's occupation of
marital property after her husband abandoned her. Of critical
importance was the prior relationship between the parties, knowledge
of the wife's presence, and her husband's concurrence in her
occupation of the land by failing to take steps to prevent her from
retaining the property. In the instant case, evidence of a prior
relationship between the parties and of Keyway's knowledge and
concurrence in the Selvys' occupation of the property is lacking. 
Accordingly, plaintiffs' theory must fail.
 In the alternative, plaintiffs argue that the landlord/tenant
relationship is not essential to their case against defendants. 
Rather, plaintiffs claim that Keyway, as owner of the property, had a
duty to protect the Selvys from dangerous conditions "even if they
were trespassers." Plaintiffs acknowledge that, in Illinois,
landowners owe no duty to maintain their premises for trespassers. 
See Kahn v. James Burton Co., 5 Ill. 2d 614, 126 N.E.2d 836 (1955). 
Furthermore, in cases involving personal injuries to children, we no
longer rely on the attractive nuisance theory. Rather, ordinary rules
of negligence apply. Kahn, 5 Ill. 2d 614, 126 N.E.2d 836. 
 However, plaintiffs rely on the exception to this rule created in
Kahn. In Kahn, the supreme court found that owners must exercise due
care to remedy a dangerous condition to protect children where: (1)
the owner knew or should have known that children habitually frequent
the property; (2) a dangerous condition was present; (3) the dangerous
condition was likely to injure children because they are incapable of
appreciating the risks; and (4) the expense of remedying the condition
was slight when compared to the risk. 5 Ill. 2d 614, 126 N.E.2d 836.
 We find that plaintiffs' Kahn argument suffers from the same
infirmity as all of plaintiffs' arguments: the absence of evidence
establishing that Keyway knew or should have known that there were
children on the premises. Therefore, we find that Keyway did not have
a duty to protect the Selvy children against exposure to lead-based
paint. 
 Plaintiffs also challenge Judge Cox's ruling vacating her
previous award of sanctions against Keyway. We find that Judge Cox's
ruling vacating the award of sanctions complied with Supreme Court
Rule 137 as it specified her reasons for doing so. 134 Ill. 2d R.
137; In re Marriage of Adler, 271 Ill. App. 3d 469, 648 N.E.2d 953
(1995). In addition, Judge Cox's ruling was informed, based upon
legitimate and relevant reasons, and followed logically from the
reasons stated. See Olsen v. Staniak, 260 Ill. App. 3d 856, 632
N.E.2d 168 (1994). Therefore, we find that the trial court did not
abuse her discretion in deciding that sanctions were not warranted. 
 Affirmed.
 HOFFMAN, P.J., and CAHILL, J., concur.