(No. 36600.—

JOYCE SAMPSON, Appellant, *vs*. THE VILLAGE OF STICKNEY *et al.*, Appellees.

*Opinion filed January 23, 1962.—Rehearing denied March 22, 1962.*

JOSEPH B. GILBERT, of Chicago, for appellant.

BYRON S. MATTHEWS, and THOMAS A. MATTHEWS, both of Chicago, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The question presented by this appeal is the extent to which the village of Stickney is liable to the holder of special assessment bonds dated February 16, 1927, which were issued by the village to anticipate the collection of

special assessment No. 6. The aggregate par value of this issue is $415,000, of which the plaintiff is the owner of $49,500, and bears interest at the rate of 6% per annum. Plaintiff's bonds have been in default since the first interest paying date. A master in chancery of the superior court of Cook County recommended a decree for the plaintiff in the amount of $118,509.77; the chancellor entered a decree for the plaintiff in the amount of $11,179.50; and the Appellate Court, First District, reversed and remanded the cause with directions to enter a decree for plaintiff in an amount which we compute to be in excess of $30,000. (*Sampson* v. *Village of Stickney,* 30 Ill. App. 2d 13.) We granted leave of appeal for further review.

Lenora Schnitzer was the holder of the bonds in March 1937 when she filed a suit in the superior court of Cook County to enforce payment of sums allegedly collected by the village on the assessment. The court entered a decree in October of 1937 ordering the village to pay her $5962.76 as her prorata share of collections made under the assessment up to April 30, 1937, and retained jurisdiction of the case. On February 23, 1954, Lenora Schnitzer's assignee was substituted as party plaintiff. Two weeks later he filed a petition alleging that the village had not made any payments on the bonds, except for the $5962.76 paid under the 1937 decree, and that collections had been made on the assessment since that time which the village comingled with its general funds. He asked that an accounting be made and the village be ordered to pay the amount due him. The village answered that it had not made any collections which are applicable to the bonds and coupons in question.

The plaintiff later demanded admission of facts and propounded interrogatories. After several court orders and a rule directed to several of the village officials to show cause why they should not be held in contempt for failure to answer, the village attorney prepared answers to the demand for the admission of facts and written interroga-

tories. The answers are inconsistent, equivocal and little is admitted in them. An exhibit in one answer does admit, however, that some collections were made on special assessment No. 6 and sets forth amounts collected in cash and in bonds in lieu of cash from the date of the accounting in the 1937 decree to July 1, 1949. The village attorney also stated in answer to written interrogatories that all delinquent installments on all special assessments including No. 6 had been sold to the Suburban Bond and Service Company of Riverside, Illinois, on September 1, 1949, for the sum of $1448.00.

When the cause came on for hearing, the plaintiff shifted from the theory set out in the petition that the village was liable for sums collected under special assessment No. 6 and proceeded before the master on the theory that the manner in which the delinquent assessment liens were sold constituted a breach of trust on the part of the village and that it should be held liable for the full par value of plaintiff's bonds and interest coupons plus a 5% surcharge on that amount from the due date of the bonds. He did not try to establish what was collected on special assessment No. 6. The village clerk, who had been served with a *subpoena duces tecum* requiring him to appear at the hearing with certain documents pertaining to the sale, was called by plaintiff as an adverse witness and examined at length with regard to the documents. The village attorney was also called by plaintiff as an adverse witness and was examined primarily as to whether any payments other than those ordered in the 1937 decree had been made upon the bonds in question and the manner in which the sale of the liens had been conducted. The only other witness was a certified public accountant who testified that the unpaid principal and interest coupons on the bonds together with interest at the rate of 5% per annum from the date of accounting in the 1937 decree to September 30, 1956, amounted to $118,509.77. (The bonds were assigned to

Joyce Sampson after the hearing before the master and she was substituted as party plaintiff six days before the master's report was submitted.)

The master accepted plaintiff's theory that the sale of the liens was a conversion of trust funds and recommended a judgment for plaintiff in the amount of $118,509.77. The chancellor and the Appellate Court held that the village did not hold the special assessment liens in trust for the benefit of the bondholders, but is liable as trustee only for funds collected. The plaintiff contends that the chancellor and Appellate Court erred in failing to hold the village liable for the face amount of her bonds and interest coupons, surcharged with interest at the rate of 5% per annum on that amount from the due date of the bonds because of the manner in which the sale was conducted.

The sale was made pursuant to an ordinance adopted August 9, 1949, and section 84—56 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1951, chap. 24, par. 84—56) as then in force. Notice of the sale was published in the National Corporation Reporter on August 12, 1949, and the sale was conducted at the village hall on August 15, 1949. Assessment liens, including those of special assessment No. 6, approximating $1,000,000 were sold for $1,448 to Suburban Bond and Service Company.

The village had the right to sell and assign the special assessment liens and a sale of such liens may be valid even though the moneys received through such sale are less than the amount due. (*People ex rel. Drobnick* v. *City of Waukegan*, 1 Ill.2d 456; *Bromberg* v. *Kulp*, 398 Ill. 449.) The plaintiff made no attempt to show the market value of the assessment liens or that her predecessor in title did not have notice of the sale; and the village did publish a notice of the sale, although none was required under the statute. There was a *prima facie* showing of compliance with the statute and the record fails to establish that the sale was fraudulent.

The village is liable to plaintiff, nevertheless, for her

prorata share of funds collected under special assessment No. 6. The chancellor and the Appellate Court did not agree, however, as to what the record shows was collected under that assessment. As we have mentioned, the plaintiff made no attempt to establish what had been collected under the assessment, and the only evidence on this issue is what was admitted by the village.

The chancellor's finding of $11,179.50 is based on plaintiff's exhibits 2A and 2B which had been prepared by the village attorney. The Appellate Court held that the village's liability should be computed not only with reference to the amounts admitted to have been collected as set out in exhibits 2A and 2B, but also in accordance with the findings in a decree entered by the superior court of Cook County on July 1, 1953, in the case of *Chalberg* v. *Village of Stickney*. That case involved a suit on special assessment bonds issued by the village to anticipate the collection of special assessment No. 6. It involved a different party plaintiff, it covered a different accounting period, and did not cover all of the series here involved. The Chalberg decree, to the extent here applicable, found that amounts greater than those admitted in plaintiff's exhibits 2A and 2B were collected by the village. The Chalberg decree which was marked "approved" by the village attorney was admitted in evidence in this case. The Appellate Court held that by marking the decree "approved" the attorney had not only approved the form of the decree but had acquiesced in the findings and it was therefore admissible as an admission by a party opponent.

After a chancellor has announced his decision, he generally directs the party, in whose favor he has decided the cause, to prepare a draft decree. After the draft decree is prepared, it is generally submitted to the other party to determine whether it conforms with the announced decision of the chancellor. If the other party is satisfied that the draft decree does conform to the announced decision, he

indicates his approval by marking the decree "approved" or "approved as to form" and signs it. The decree is then presented to the chancellor for his signature. "Approval" by the losing party cannot *ipso facto* be construed as acquiescence in the substance of the decree.

We have examined the entire record carefully and find that the village attorney at no time admitted that the findings in the Chalberg decree were correct. The findings in that decree cannot be used as evidence in this case to determine what was collected by the village. It is entirely possible that plaintiff could have established that greater sums were collected under special assessment No. 6 than were admitted by the village. That theory of recovery was not pursued, however, and the only evidence of what the village collected are the exhibits prepared by the village attorney, introduced by plaintiff, and properly admitted as admissions by a party opponent.

For the reasons hereinbefore stated, the judgment of the Appellate Court is reversed and the decree of the superior court is reinstated and affirmed.

*Appellate Court reversed; superior court affirmed.*