LIONEL BERYMON *et al.*, Plaintiffs-Appellants, v. REV. GEORGE HENDERSON *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 84—2143

Opinion filed August 6, 1985.

---

Daidone & Daidone, P.C., of Chicago (Benjamin Daidone and Michael W. Rathsack, of counsel), for appellants.

Sidney Sherman, of Chicago, for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County which denied their motion to vacate three previously entered court orders and which granted defendants' motion for judgment on the pleadings.

Plaintiffs, members of the board of directors of defendant The Greater Garfield Park Missionary Baptist Church, a not-for-profit corporation, filed a complaint seeking injunctive and other relief against defendant Reverend George Henderson, pastor for the church. Plaintiffs alleged that Henderson had used church funds "for the purpose of acquiring and establishing a new church"; that he

had entered into a contract for the purchase of a new church building, and had obtained a mortgage loan thereon "without obtaining prior approval of the Board of Directors and the membership of the church."

Plaintiffs further alleged that Henderson had "taken immediate steps to sell the main church building of the Church," and contended that Henderson's actions were "without proper authority of the Board of Directors and the membership of the church" and "in contravention of the By-Laws" of the church. Plaintiffs requested the court to enjoin Henderson from performing any acts in connection with the sale of the old church, to require Henderson to account for "all monies transferred from the accounts" of the church and for imposition of a constructive trust "upon the real property" alleged to have been purchased for use of a new church.

On July 28, 1983, the court entered, without notice to defendant, a temporary restraining order enjoining Henderson from executing any documents involving the sale of the church property.

In August 1983, the temporary restraining order was dissolved, but acceptance by the pastor of any offer to purchase the church property was made subject to order of court.

Plaintiffs thereafter filed a second motion for a temporary restraining order, contending that Henderson was removing certain church personal property from the church. The court entered an order which precluded any further moving of church property and provided for an inventory of the property. The case was continued for a status check to September 9, 1983. On that date an order was entered which provided, in part, that plaintiffs were "reinstated to the Board of Directors" of the church and directed:

"(2) that the Board of Directors [of the church] convene a meeting for the purpose of:

(1) setting down a general meeting of said church for the purpose of voting upon the acquisition of the property at 2140 N. Richmond, Chicago [the new church], and any other business.

(2) The sending out of proper written notice to the congregation at least five (5) days prior to said meeting

(3) the setting down of the place of such general meeting and who is to moderate same

(4) and that such meeting shall be conducted under Robert's Rules of Order, or as otherwise agreed by the Board

(5) that said general meeting shall be held prior to Sept.

18, 1983."

The order was prepared by Peter Apostal, plaintiffs' attorney.

In September plaintiffs filed a motion for temporary restraining order requesting the court to enjoin Henderson "from conducting a general meeting of the congregation" at the new church location. In response the court ordered both sides to "confer regarding the validity of the church membership" and to report back to the court.

On December 28, 1983, the parties filed a document entitled "STIPULATION" which provides, in part, that "for the purpose of partial settlement, it is hereby stipulated and agreed by the parties hereto by and through their respective attorneys, as follows:" The stipulation then provides that "all voting members" of the church shall vote on the issue of whether to purchase the new church and whether to sell the old church. The parties also stipulated that an attached list of names and addresses constituted all members of the church who were eligible to vote. Finally, the document provides: "It is further stipulated that the court may enter an order accordingly." This stipulation was signed by both attorneys.

On December 28, 1983, the court entered an order which "approved" the stipulation and provided that "the two propositions as set forth in said stipulation shall be voted upon by the membership" of the church.

On January 5, 1984, both attorneys signed a "notice of filing" which certified that they had sent to the voting members of the church a "Notice of Voting" which included a sample ballot containing the two questions to be voted upon by the congregation.

On January 18, 1984, plaintiffs' attorney filed a document entitled "Report of Voting" which stated that the congregation had voted 150 to 77 in favor of purchasing the new church and 138 to 86 in favor of selling the old church. These vote tallies were signed as "approved" by both attorneys as well as all individual parties to the lawsuit.

On January 18, 1984, the court entered an order, prepared by plaintiffs' attorney and marked "approved" and signed by both attorneys, which provided in part:

"(1) That the election of the Board of Trustees of the [church] be conducted prior to 30 days from the date hereof and the report of the results of said voting be made to this court within 30 days of the date of this order.

(2) The members eligible to vote in said Trustees election shall be the same members as were eligible to vote [at the previous election]."

That order also "approved and confirmed" the congregation's vote, which favored the purchase of the new church and the sale of the old church.

On February 6, 1984, the court entered an order denying plaintiffs' motion to have the trustees election held at a location other than where the prior referendum was held.

On February 23, 1984, both attorneys signed a "notice of filing" on the "notice of election of trustees." Attached thereto was the notice which the attorneys sent to all congregation members advising them of the trustees' election together with a sample ballot.

In March 1984, plaintiffs' attorney filed a "Report of Voting" which reflected that defendant Henderson and his nine co-candidates for the church's 10 trustees' positions had defeated plaintiffs' slate of 10 candidates by a vote of 137-83, with 21 "contested ballots." Both attorneys, defendant Henderson and the three plaintiffs all signed the "official results" sheet. On March 2, 1984, the court entered an order which "approved and confirmed" the trustees' election. This order is marked "approved" and signed by both attorneys.

In March the case was dismissed for want of prosecution. Defendant thereafter successfully moved to vacate the dismissal.

On March 23, 1984, defendant Henderson's attorney moved to allow the church to intervene in the action, and for leave to file a counterclaim for injunctive relief against plaintiffs. Plaintiffs moved for leave to substitute attorneys. These motions were granted.

In March 1984 plaintiffs, by their new attorneys, filed a document entitled "Motions" requesting the court to vacate, or reconsider its orders of September 9, 1983, January 18 and March 2, 1984. (These orders (1) set the meeting and vote by the congregation on the issues of selling the old church and buying the new church; (2) set the trustees election, and approved and confirmed the vote of the congregation on the sale of the church; and (3) approved and confirmed the trustees election.) The motion to vacate these orders contended that they were entered in the absence of "pleadings to sustain" them; that they "usurped the powers of the Board of Directors as provided under the bylaw of the" church; and that the March 2 order "amended the by-laws of the" church in that it changed the number of directors from five to 10 and removed the "duly elected" trustees "without any cause and contrary to law."

After a hearing on plaintiffs' motion to vacate the orders, the court indicated that it would deny the motion since, in the court's opinion, the orders in issue were not "mandatory" but were entered

"by agreement of both parties to the lawsuit." On May 16, 1984, the court denied plaintiffs' motion to vacate but granted plaintiffs leave to file another petition seeking similar relief.

Plaintiffs thereupon filed a motion to vacate the order of May 16, 1984, and a "petition" in support, contending that the three challenged orders were not "agreed" orders. Plaintiffs filed in support the affidavit of their previous attorney wherein he declared that the challenged orders were entered at the "instance and direction" of the court and that the "approved" notation appearing on some of those orders relates not to the substance but to the form of the orders. The affidavit also related that plaintiffs' compliance with those orders was "done for the purpose of complying with the court's request and direction" and that such compliance was made "without forfeiting or waiving any legal or equitable rights of the Plaintiffs."

The court denied the motion, noting that its stance throughout this litigation was that the congregation should, by "democratic disposition," decide its own problems and that both counsel "agreed to that procedure." The judge stated that the challenged orders were not mandatory, but were orders which "ratified the wishes and the desires of the majority of the members of the church."

"This court never took the position that it was mandating or dictating or enforcing by virtue of any of these orders what the church should do or what their members should do.

Every order that was presented to this court was presented on the basis of having been an agreement reached by members of the church.

\* \* \*

\* \* \*. And at no time, at no time, was there ever any expression of disagreement by either counsel as to the content of the orders, as to the actions of the membership, as to the propriety of the decisions that have been made democratically by the members of the church.

\* \* \*

Every order that the Court executed, in the opinion of this Court, was an agreed order because it was—there was no dispute as to the contents of the order. The terms of the order were not prepared, manufactured, or composed by the Court. The terms of the orders were composed by both counsel acting in concert and were accepted by this Court as the views and ratified opinions of the congregation of the church."

The court thereupon denied the motion to vacate, and also granted

defendants' motion for judgment on the pleadings.

Plaintiffs contend in this court that the trial court erred in refusing to vacate the orders of September 9, 1983, January 18 and March 2, 1984, since "[t]he contested orders pertaining to the election of the Board of Directors and the sale of the church property were entered pursuant to the orders of court without agreement or acquiescence of plaintiffs." Alleging that there exists a "misunderstanding" as to whether these were agreed orders, plaintiffs argue that "justice is best served if the litigant's perception of events is controlling."

Defendants respond that the challenged orders were "consent" orders and therefore not appealable.

■ Generally, an order entered by agreement of the parties is not subject to appellate review.

"An agreed order is a recordation of the agreement between the parties and is not a judicial determination of the parties' rights. [Citations.] For this reason, an agreed order generally is not subject to appellate review. [Citations.] Such an order is conclusive on the parties and can be amended or set aside by one of the parties only upon a showing that the order resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the position or
· capacity of the parties, or newly discovered evidence." *In re Haber* (1981), 99 Ill. App. 3d 306, 309, 425 N.E.2d 1007.

We observe initially that the parties are correct in asserting that the use of the word "approved" and the attorneys' signatures on an order do not in fact establish the order as an "agreed" order. Rather, the "approved" notation merely affirms that the attorneys are satisfied that the written order conforms with the court's announced decision. " 'Approval' by the losing party cannot *ipso facto* be construed as acquiescence in the substance of the decree." (*Sampson v. Village of Stickney* (1962), 24 Ill. 2d 134, 140, 180 N.E.2d 457.) Customarily, orders entered pursuant to agreement of the parties are labeled "agreed order."

In the present case, however, the trial court found that the orders here in issue are "agreed" orders which recited agreements between the parties rather than judicial determinations of the rights of the parties. Our review of the record compels us to agree with the trial court that these challenged orders are "agreed" orders.

The record contains no reports of proceedings from the hearings wherein these orders were entered, nor did plaintiffs' attorney file bystanders reports for these proceedings. The record discloses no

written or oral objections to these orders. Nor do any of the challenged orders recite that it was entered over plaintiffs' objections, although plaintiffs' attorney prepared two of the challenged orders.

The only "evidence" in the record regarding the circumstances surrounding entry of these orders are the lengthy statements of the trial judge who, in essence, stated that he did not direct entry of any of the three orders; rather, he signed the orders after they were prepared and presented to the court. He stated that each order was "agreed" to by both attorneys after discussions between the attorneys and the court. Defendants' attorney expressly agreed with the trial court's statements.

The only contrary evidence presented by plaintiffs was the affidavit presented by its previous attorney—the attorney of record at the time the challenged orders were entered—stating only that these orders were entered at the "instance and direction" of the court.

We also observe that all of the parties and their attorneys did in fact follow the procedures set forth in the challenged orders when they conducted both the referendum on the questions of whether to buy a new church and sell the old church and the election of a new board of trustees.

■ In consideration of all of these circumstances, we conclude that these orders were, in fact, agreed orders. Therefore they are not appealable unless their entry resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence. (*In re Haber* (1981), 99 Ill. App. 3d 306; see also *Lubowsky v. Skokie Valley Community Hospital* (1979), 79 Ill. App. 3d 909, 398 N.E.2d 1037.) Because plaintiffs do not contest these orders on any of these bases, the trial court did not err in refusing to vacate these orders.

■ Plaintiffs next argue that even if the challenged orders are determined to be agreed orders they should be vacated because their counsel was "without authority" to enter into such agreements. A review of the record shows that this issue was never raised in the trial court. Contentions not raised in the trial court are waived on appeal. *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669.

■ The final issue posed is the propriety of the order of the trial court granting defendants' motion for judgment on the pleadings. That motion requires the trial court to determine whether the pleadings raise any issue of material fact and, if not, whether the movant is entitled to judgment as a matter of law. (*Bethany Re-*

*formed Church v. Hager* (1980), 84 Ill. App. 3d 684, 406 N.E.2d 93.) In light of the results of the congregation's vote to purchase a new church, and to elect a new board of directors, the pleadings do not raise any issue of material fact, and defendants were entitled to judgment as a matter of law.[1] Therefore, the trial court did not err in granting defendants' motion for judgment on the pleadings.

For the reasons herein stated, the judgment of the trial court is affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.

---

[1]Long after the congregation had voted to purchase the new church and had elected the new board of directors plaintiffs, for the first time, argued that these election proceedings were "nullities" because such procedures conflicted with the controlling corporate bylaws. In our opinion, plaintiffs waived this contention by their participation without objection in these elections. (See, *e.g., Levin v. Hunter* (1955), 6 Ill. App. 2d 461, 128 N.E.2d 630.) Further, plaintiffs never filed any corporate documents which support their contention that these election procedures conflicted with the church's articles of incorporation or bylaws.