CONNIE OLSEN, Plaintiff-Appellee, v. WITOLD STANIAK, Defendant (Jon Floria, Third-Party Defendant-Appellee; Ashley S. Rose, Respondent-Appellant).

First District (1st Division)   No. 1—92—1254

Opinion filed March 28, 1994.

Law Offices of Ashley S. Rose, of Wheaton, appellant *pro se.*

Ronald E. Shadle and Paul M. Orenic, both of Capetta & Shadle, Ltd., of Oakbrook Terrace, for appellees.

JUSTICE MANNING delivered the opinion of the court:

This is an appeal by defendant Ashley S. Rose and a cross-appeal by Jon Floria from a judgment of the trial court. The trial court entered an order imposing sanctions against Rose based upon the court's determination that the complaint and affirmative defenses filed by Rose violated Illinois Supreme Court Rule 137. (134 Ill. 2d R. 137.) In Floria's cross-appeal he asserts that the sanction amount awarded by the trial court against Rose was inadequate. For the following reasons, we affirm.

The record reveals that on April 15, 1986, Witold and Daniella Staniak retained attorney Jon Floria to represent them in the

purchase of property located in Barrington, Illinois, owned by Connie Olsen. Helen Edwards, a real estate broker for ReMax, referred the Staniaks to attorney Floria. Attorney David Lynam initially represented Connie Olsen in the sale of the property. The Staniaks agreed to purchase the Olsen home for $170,000 and deposited $17,000 as earnest money which was held by ReMax. The closing was initially set for June 15, 1986, contingent upon the Staniaks securing a mortgage commitment within 40 days. The Staniaks were codefendants in the original action seeking to recover the earnest money but are not parties to this appeal.

On April 21, 1986, attorney Floria sent a letter to attorney Lynam requesting that the contract between the Staniaks and Olsen be modified to provide that the purchase be contingent upon the Staniaks first selling their home. Nothing in the record suggests that the sellers objected to this amendment. However, on April 30, 1986, Lynam sent a letter to Floria requesting modification of the contract regarding various warranties, including the exclusion of express warranties for the property. Floria indicated his acceptance of the modifications by signing the letter and returning it to Lynam.

The closing did not occur by the June 15 date, and Floria withdrew from representation of the Staniaks on July 30, 1986. On July 31, 1986, Lynam sent a letter to attorney Phillip Solzan, the Staniaks' new counsel, advising him that the Staniaks were in default of the contract for failing to close by June 15, 1986. On August 4, 1986, Solzan sent a letter to Lynam explaining that the Staniaks were not aware of the letter of April 30, 1986, from Lynam requesting modifications to the contract, that he did not feel the Staniaks should be bound by the modifications, and that he desired to reach an agreement to avoid a lawsuit. It was the Staniaks' position that Floria had accepted these modifications without their knowledge or consent. On August 13, 1986, Lynam sent a letter to Solzan demanding that a closing take place on August 21, 1986. The letter also explained that Olsen would assert her right to declare a forfeiture by the Staniaks of their earnest money deposit if they did not close by that date. After the date for closing had expired, both Solzan and Lynam made a demand on ReMax for the earnest money.

On October 7, 1986, Olsen retained attorney Scott Colky to represent her in an action to recover the earnest money. Colky filed a complaint for declaratory judgment against the Staniaks and ReMax. Attorney Ashley Rose was retained by the Staniaks to represent them in that action. On May 12, 1987, Rose filed a 37-page answer and affirmative defenses to Olsen's complaint. Rose also filed a

counterclaim against Olsen, a cross-claim against ReMax, and a third-party complaint against Floria. In Rose's affirmative defenses he alleged, in pertinent part, that:

(1) Olsen scheduled and rescheduled closing dates knowing that the Staniaks had not received a firm commitment for mortgage financing, and knowing that there was outstanding work to be completed on the property;

(2) Olsen failed to disclose to the Staniaks that a foreclosure action was pending at the time of the contract; and

(3) Upon information and belief, the relationship between Floria and ReMax was an established one, rendering Floria's allegiance as legal counsel to the Staniaks a legal sham.

On December 6, 1988, Olsen filed a motion for summary judgment and for attorney fees against Rose, pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—611). On June 15, 1989, the Staniaks also filed a motion for sanctions pursuant to section 2—611 against Rose, who had withdrawn as their counsel at that time. On August 8, 1989, the court determined that Olsen had established a *prima facie* case under section 2—611 against Rose and ordered Rose to present his defense on October 3, 1989. The court, however, denied the Staniaks' section 2—611 motion against Rose, and granted Floria and ReMax 21 days to file their section 2—611 motions. On August 29, 1989, Floria filed his motion for attorney fees against Rose consistent with the court's order of August 8, 1989. Floria pleaded in his motion that Rose violated Rule 137 by signing his signature on the pleadings, specifically alleging that count II of the third-party complaint against him for malpractice and negligence was done to harass or intimidate. Floria also asserted that Rose violated Rule 137 with respect to his prayer for punitive damages and allegations unsupported by personal knowledge.

Eventually, on September 6, 1989, attorneys for the parties entered into a stipulation and agreed order dismissing all complaints, claims, cross-claims, third-party complaints and counterclaims. The order, however, did not dismiss any pending section 2—611 or Rule 137 motions against Rose, consistent with the parties' agreement.

On November 20, 1990, after a hearing, the court determined that as to Connie Olsen three of the affirmative defenses raised by Rose violated Rule 137, and one violated section 2—611. As to Jon Floria, the court determined that one of the affirmative defenses raised by Rose violated both Rule 137 and section 2—611. The court in the written order incorporated by reference all of its findings.

On January 1, 1991, Rose filed a motion for directed finding,

which the court on February 4, 1991, treated as a motion to reconsider and denied the motion. The court then heard evidence on damages. After hearing the evidence, the court ordered Rose to pay Olsen $2,125 as a sanction for violating Rule 137, and ordered Rose to pay $2,142 to Floria as and for sanction for violating Rule 137.

Rose first argues that the trial court abused its discretion by conducting a Rule 137 hearing where the parties entered into an agreed order dismissing all complaints, counterclaims, cross-claims, and third-party complaints with prejudice as to the named parties. Rose asserts that because the court dismissed the case, the basis of Olsen's and Floria's motions for sanctions against him should have been nullified. Rose contends that Olsen's motions for sanctions were combined in her motion for summary judgment against him, and once the court dismissed the action for summary judgment, the motion for sanctions was likewise dismissed. Rose further asserts that by accepting the stipulation and agreed order entered into by Olsen and Floria, the trial court impermissibly delegated judicial functions that are relegated to the court. He argues that courts have no power to delegate judicial functions unless clearly authorized by law. *People v. Love* (1980), 83 Ill. App. 3d 948, 404 N.E.2d 1085.

Supreme Court Rule 137 (134 Ill. 2d R. 137) provides:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation***."

Initially, it should be noted that Supreme Court Rule 137 became effective August 1, 1989, and it preempted all matters sought to be covered by section 2—611 of the Code of Civil Procedure. (See, *e.g., In re Marriage of Sykes* (1992), 231 Ill. App. 3d 940, 946, 596 N.E.2d 1226.) Supreme Court Rule 137 and section 2—611 are the same except that Rule 137 provides that a circuit court "may" impose sanctions for violations of the rule while section 2—611 provides that sanctions "shall" be imposed. (*Graham v. Hildebrand* (1993), 248 Ill. App. 3d 742, 743, 618 N.E.2d 1259.) The Staniaks' and Olsen's initial motions for sanctions against Rose were filed prior to August 1, 1989. Thus, the governing rule was section 2—611 with its affirmative language that sanctions "shall" be imposed. However, Floria's mo-

tion for sanctions was filed August 8, 1989, after the effective date for Rule 137. Therefore, the permissive language "may" was applicable.

■ In the instant case, the court in fact held a hearing on both Rule 137 and section 2—611 motions. Rose contends that the court erred by conducting this hearing when Olsen and Floria had entered into an agreed order. He also maintains that the court's acceptance of the agreed order was an improper delegation of judicial power. Generally, an order entered by agreement of the parties is not subject to appellate review. (*Berymon v. Henderson* (1985), 135 Ill. App. 3d 858, 864, 482 N.E.2d 391.) An agreed order is a recordation of the agreement between the parties and is not a judicial determination of the parties' rights. *Berymon*, 135 Ill. App. 3d at 864.

In the instant case, although Olsen and Floria entered into an agreed order by which the trial court dismissed their cause of action, the court's order specifically provided that the suit was not dismissed as to any pending or potential claims by any party against Rose for costs, attorney fees or sanctions. Certainly, parties to litigation are free to enter into legally binding agreements that do not go afoul of the law. Further, an agreed order is conclusive on the parties and cannot be amended or set aside by one of the parties without a showing that the order resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence. (*In re Haber* (1981), 99 Ill. App. 3d 306, 309, 425 N.E.2d 1007.) Rose has not cited authority in support of his proposition, and it is not our duty to do so.

As to Rose's contention that the dismissal order effectively nullified any pleadings on file, we find this contention without merit. The parties' agreed order, which the court ultimately signed, was entered with the intent of proceeding against Rose for costs, attorney fees and sanctions, notwithstanding the dismissal of the underlying action.

■ Rose further maintains that by accepting the parties' stipulation and agreed order to dismiss, the trial court effectively permitted the parties to the underlying action to delegate certain judicial functions, instead of the trial court rendering such a determination. It is clear that the Illinois Constitution vests the exclusive and entire judicial power in the courts. (Ill. Const. 1970, art. VI, § 1.) Further, the application of principles of law is inherently a judicial function. (*Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 322, 347 N.E.2d 736.) However, case law clearly establishes that an

agreed order is not a judicial determination of the parties' rights. (See, *e.g., Berymon v. Henderson* (1985), 135 Ill. App. 3d 858, 864, 482 N.E.2d 391.) To the contrary, the trial court has no inherent authority to force parties to enter into an agreed order, and once such order is entered, it is not appealable unless its entry resulted from fraudulent misrepresentation, coercion or other equitable principles. (*In re Haber* (1981), 99 Ill. App. 3d 306, 425 N.E.2d 1007.) Therefore, we find that the trial court did not err in conducting an evidentiary hearing on the section 2—611 motions.

Rose next argues that the trial court erred by allowing Floria and Olsen to rest upon their pleadings. Rose contends that a motion under Rule 137 requires that an evidentiary hearing be held to determine whether the elements of the rule have been met. The purpose of the court's holding a Rule 137 evidentiary hearing is so that the parties can place before the court facts which it may rely upon in making an informed and reasonable decision. (*In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1009, 559 N.E.2d 571.) Whether a hearing must be held to determine if the allegations are without reasonable cause depends upon the circumstances presented in each case. (*Beno v. McNew* (1989), 186 Ill. App. 3d 359, 364, 542 N.E.2d 533.) However, recent decisions have endorsed summary dismissal noting that, while a hearing is dictated when one is necessary to determine whether the requirements of section 2—611 have been met, no such hearing is necessary if the requirements can be satisfied by looking at the pleadings, trial evidence, or other matters appearing in the record. (*Beno,* 186 Ill. App. 3d at 366.) Although section 2—611 has been preempted by Rule 137, we find no language in Rule 137 that modifies the requirements under which the court should hold an evidentiary hearing. Hence, we find the requirement of section 2—611 applicable.

In this case, Floria alleged in his pleadings for sanctions against Rose that:

1. Rose's prayer for punitive damages was not warranted by existing law;

2. Rose's prayer for attorney fees was not provided for by statute, contract or otherwise;

3. Inquiry by Rose would have disclosed this fact, and that the petition was filed to harass or intimidate Floria; and

4. No factual or legal basis to support a claim for malpractice existed.

Olsen's motion for summary judgment stated that Rose should be subjected to sanctions where:

1. Rose pleaded in bad faith that a closing was set prior to the Staniaks' obtaining financing and the evidence proved that this was an untrue statement;

2. Rose had no personal knowledge of any foreclosure action pending, although he attested to the truth of such statement in his pleading; and

3. Rose raised allegations of conspiracy between Olsen and Floria in the absence of any such evidence in the record and where he failed to provide proof of such a conspiracy.

The assertions in the pleadings as set forth above provided some basis for the court to determine whether the statutory requirements for imposition of sanctions were met. The court also considered the deposition testimony of Witold Staniak, Jon Floria and Phillip Solzan, in addition to affidavits, the answer, counterclaim and third-party complaint in reaching its determination. Further, before reaching its decision, the trial court held an evidentiary hearing where Rose was allowed to present rebuttal evidence related to the motion. During the hearing, Rose admitted that: (1) he did not know that Helen Edwards had conducted substantial business with Jon Floria; (2) there was no rule that required a seller to disclose his financial situation to a buyer, as it relates to foreclosure; and (3) the Staniaks obtained a commitment for up to $110,000 on June 6, 1986, which would have allowed them to close by June 15, 1986. Hence, the parties did not rest exclusively on their pleadings. Thus, we find Rose's argument is without merit.

Rose further argues that the trial court's award of sanctions was against the manifest weight of the evidence. Specifically, he maintains that Floria and Olsen failed to sustain their burden of proof on the issue of attorney fees because the only evidence they provided was that of affidavits without evidence of the reasonableness of the fees.

The decision as to whether sanctions should be imposed is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. (*Yassin v. Certified Grocers of Illinois, Inc.* (1990), 133 Ill. 2d 458, 467, 551 N.E.2d 1319.) The court's determination should clearly set forth the factual basis for the result reached in order to be accorded deferential treatment. The appellate court in reviewing a decision on a motion for sanctions must primarily determine whether (1) the trial court's decision was an informed one, (2) the decision was based on valid reasons that fit the case, and (3) the decision followed logically from the application of the reasons stated. (*In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1010, 559

N.E.2d 571.) The purpose of imposing the sanction is to prevent abuse of judicial process and punish a party who brings vexatious litigation predicated upon false statements. *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 559 N.E.2d 819.

Here, the trial court not only conducted an evidentiary hearing, but expressly stated on the record:

"There must be a written order and an explanation of costs stemming [from the violation] so I would ask you to resubmit your suggested amount of sanctions."

The court later held a fee hearing, and after hearing evidence, it deleted some charges, deleted some attorney fees and modified others, and linked the expenses as closely as it could to those involving the improper pleadings. Under these circumstances, we cannot say that the trial court's award of sanctions was against the manifest weight of the evidence.

■ Rose next contends that the trial court abused its discretion by asking him questions on direct examination. He specifically maintains that the court questioned him on matters related to his legal justification for the affirmative defenses drafted on behalf of the Staniaks. Rose cites to *Diamond Mortgage Corp. v. Armstrong* (1988), 176 Ill. App. 3d 64, 530 N.E.2d 1041, for the proposition that where the court questioned him during his case in chief without prior notice he was denied due process.

A trial court may question a witness to determine the relevancy or materiality of proffered evidence or to clarify the issues or facts presented at the trial. (*Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 315 N.E.2d 63.) The court has the discretion to examine a witness, provided that in conducting such an examination the court does not become an advocate. *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

In the instant case, it is evident from the record that the trial court's questioning of Rose was done in an effort to clarify what facts Rose relied upon in drafting the pleadings and not to advocate the court's position. Additionally, the hearing held on November 4, 1990, was a continuance of the earlier hearing held August 28, 1990, on the motion for sanctions. Rose was fully aware that the hearing involved the motion for sanctions. The inquiries made by the court during the November hearing related only to those matters.

The instant case is distinguishable from *Diamond.* In *Diamond,* the record provided evidence that defendant was called into court for an evidentiary hearing on a motion for summary judgment. She, however, found herself on trial on the merits of her counterclaim.

Those facts are not present in the instant case. At the time the court in the instant case questioned Rose, Rose was well aware that the hearing was on the motion for sanctions. In fact, at the time of the hearing there were no other motions pending as they had been withdrawn by agreement of Floria and Olsen. Therefore, the trial court did not abuse its discretion in questioning Rose on the pleadings he filed.

■ Finally, Rose argues that it was reasonable under the circumstances for him to draft the pleadings based upon the information provided by the Staniaks, and that the court abused its discretion by failing to set forth its findings and basis for its determination. We find this argument without merit. The trial court was extremely meticulous in setting forth its findings. The court specifically stated that Rule 137 places a responsibility upon an attorney to make a reasonable inquiry to determine if the pleadings are well grounded in fact. The court found that Rose basically drew up the counterclaim and affirmative defenses based upon the information provided by his clients without making a reasonable inquiry. The court further found that count V of Rose's affirmative defenses, attacking Olsen's failure to disclose an alleged foreclosure proceeding pending at the time of the contract, was based on a theory totally without basis in the law. Additionally, the court determined that Rose's sixth affirmative defense, alleging a conspiracy between Floria and Olsen to defraud the Staniaks, was untrue and not grounded in fact. The record clearly establishes that the court properly set forth its findings and the bases therefore. Consequently, Rose's argument is rebutted by the plain evidence in the record.

■ As to Floria's cross-appeal, he contends that the trial court abused its discretion in reducing the amount of fees awarded to him as a sanction. Specifically, he maintains that Rose failed to cross-examine Shadle, Floria's attorney, as to the reasonableness of the fees. He contends that by failing to do so, Rose waived any objections he might have had to the fees. Floria further asserts that in the absence of any rebuttal evidence, the trial court should have relied on the affidavit provided by Shadle as evidence of the reasonableness of the attorney fees.

In assessing the reasonableness of fees, the trial court should consider a variety of factors, including the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the

community, and whether there is a reasonable connection between the fees charged and the litigation. (*Chicago Title & Trust Co. v. Chicago Title & Trust Co.* (1993), 248 Ill. App. 3d 1065, 618 N.E.2d 949.) The trial court is permitted to use its own knowledge and experience to assess the time required to complete particular activities, and a court of review may not reverse an award of attorney fees merely because it may have reached a different conclusion. *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890.

Here, the trial court conducted a hearing on the fees and reviewed the fee petitions. The court attempted to match, as best it could, those expenses related to defending the frivolous pleadings. Only those fees which are reasonable will be allowed, and the party requesting fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. (*Harris Trust & Savings Bank v. American National Bank & Trust Co.* (1992), 230 Ill. App. 3d 591, 595, 594 N.E.2d 1308.) Floria has failed to provide persuasive evidence that the court is required to impose sanctions in direct correlation to the costs provided in the affidavits of a moving party. We find no merit in Floria's proposition.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.