CYNTHIA PLAMBECK, Plaintiff-Appellant, v. GREYSTONE MANAGE-
MENT AND COLUMBIA NATIONAL TRUST COMPANY, as Trustee,
Defendant-Appellee.

First District (3rd Division)   No. 1—94—2880

Opinion filed March 27, 1996.—Modified on denial of rehearing
June 19, 1996.

Jon A. Duncan and Thadford A. Felton, both of Cichocki & Armstrong, Ltd., of Chicago, for appellant.

James P. Boyle, of Murphy & Boyle, Chartered, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

This case involves the question whether a tenant's motive, even if "improper" or unrelated to the tenancy, is relevant in seeking to terminate a lease agreement under provisions of the Chicago Residential Landlord Tenant Ordinance (Ordinance). Chicago Municipal Code § 193.1 *et seq.* (amended September 8, 1986).[1]

On September 15, 1988, Cynthia Plambeck (plaintiff or tenant) entered into a written lease agreement with Greystone Management & Columbia National Trust Company (defendant or landlord) for lease of an apartment in a seven-unit building in Chicago in which the owners did not reside. Tenant gave landlord a security deposit of $480 when she rented the apartment.

The parties renewed the lease in October 1989, and landlord increased tenant's security deposit to $500, requiring tenant to remit an additional $20 payment to landlord. Landlord deposited tenant's $20 check into the same bank account in which it also deposited rent proceeds and other assets. The lease was renewed again in October 1990, and increased tenant's security deposit to $525, requiring tenant to remit an additional $25 payment which the landlord again

---

[1]The lease at issue in this case was executed in 1990; thus, the Ordinance in effect at that time governs this dispute. The Ordinance is now codified as section 5—12—010 (Chicago Municipal Code § 5—12—010 *et seq.* (amended November 6, 1991)).

deposited into its own account. Landlord claims these deposits were made in error or oversight.

On April 28, 1991, tenant cosigned a note and mortgage with her mother and boyfriend for purchase of a home nearby in Chicago. On May 1, 1991, tenant notified landlord in writing of her intention to vacate the apartment on May 31, 1991. This notice, however, was rescinded by the tenant in writing on May 14, 1991.

Also on May 14, 1991, tenant served landlord with written objections to her lease agreement based on the landlord's alleged violation of various provisions of the Ordinance. The May 14 correspondences notified landlord of tenant's intent to terminate her tenancy 30 days after landlord's receipt of the letters, unless landlord:

1. Corrected 26 alleged violations of the Chicago Building Code (the Code) in the premises and common areas as provided in section 193.1—7 of the Ordinance;

2. Tendered tenant a new lease, within 15 days, deleting certain provisions in the parties' existing lease allegedly prohibited by section 193.1—14 of the Ordinance, such as the requirement that tenant waive certain remedies against landlord (section 193.1—14(a)), lack of mutuality in the assessment of attorney fees (section 193.1—14(f)), limitation of landlord's liability (section 193.1—14(c)), waiver of notice of termination of tenancy (section 193.1—14(d)), the right to shorten the demised term (section 193.1—14(g)) and 14 other claims of conflict between the Ordinance and the lease;

3. Disclosed the name, address and telephone number of the person authorized to accept service of process for the landlord as required by section 193.1—9 of the Ordinance; and

4. Disclosed to tenant the violations of the Code which had been cited by the City of Chicago within the preceding 12 months as mandated by section 193.1—10 of the Ordinance.

Eighteen days later, on June 1, 1991, tenant "terminated" her lease by written notice, effective June 2, 1991 (19 days after notifying landlord of her intention), by reason of landlord's failure to tender a new lease in compliance with the Ordinance. Tenant paid full rent for the month of May and vacated on May 31, 1991, leaving the premises in "good condition." Tenant subsequently moved into her new home.

On June 21, 1991, tenant requested in writing that landlord return her security deposit. Landlord made no claim of damages, but withheld tenant's security deposit as a setoff for back rent claimed for the months the apartment remained vacant, June and July of 1991. Landlord believed that tenant had not legally terminated her lease and thus remained liable for June and July's rent. Addition-

ally, landlord did not pay or credit the tenant with interest on her security deposit from 1989 to date.

Tenant filed a 14-count complaint against landlord in the circuit court of Cook County, seeking damages available under the Ordinance for landlord's: (1) failure to pay interest on tenant's security deposit; (2) failure to return her security deposit; (3) commingling of the security deposit; (4) refusal to tender tenant a new lease; (5) failure to disclose name of agent; (6) failure to disclose building code violations; and (7) landlord's breach of implied and statutory warranties of habitability.

After a bench trial, the trial court found in favor of tenant on those counts relating to landlord's failure to pay interest on the security deposit in 1989 and 1990, respectively, as violations of section 193.1—8 of the Ordinance.

The trial court found, quite accurately, that tenant's actions in seeking to terminate her tenancy were motivated by a desire to "get out of her lease," and not due to a sudden abhorrence of building code violations or a bout of tenant activism. The trial court found for landlord on the remaining counts and applied tenant's security deposit to offset unpaid rent.

The trial court found additionally, and as the basis for its rulings, that tenant had not legally terminated her lease, entitling landlord to a setoff of $503.12 in back rent against amounts due tenant for failure to return and pay interest on the security deposit. The setoff was accomplished by landlord's oral motion absent any pleading to allege a setoff with the trial court. Tenant disputes that a trial court can award an unpleaded setoff, while landlord maintains that it merely conformed the pleadings to the proof.

Tenant's appeal to this court focuses on whether (1) she legally terminated her lease and thus should have prevailed at trial, and (2) whether the trial court's decision that she did not properly effect such termination was based on its perception that her motives for termination had nothing to do with her lease or occupancy.

As an initial matter, we acknowledge that tenant's motives were impure in the sense that she was eager to terminate her lease in order to avoid either paying rent while living in her new home or the trouble of subletting for the remaining two months of the lease. The question is whether and to what extent her motivation should have affected the trial court's analysis of the dispute.

Landlord contends that "[t]he decisive factor in this case is that the very day before she notified the Defendants of her intention to vacate the premises, the Plaintiff purchased a new home for herself and her family. All subsequent notices (of landlord's Ordinance viola-

tions) sent by Plaintiff were clearly pretextual and in furtherance of her scheme to devise some justification for her ultimate goal of getting out of her obligations."

Landlord further contends that "the trial court's reliance on this fact in assessing the credibility of the Plaintiff's testimony was within its discretion and reasonable." Landlord invites us to apply a manifest weight of the evidence standard of review because "the issue of credibility is for the trial court."

■ Although landlord is correct that a reviewing court will generally not disturb a trial court's findings unless they are against the manifest weight of the evidence (*Northern Illinois Medical Center v. Home State Bank*, 136 Ill. App. 3d 129, 142, 482 N.E.2d 1085 (1985)), construction and legal effect of the lease agreement and controlling ordinance raise questions of law which we review *de novo*. See *Naylor v. Kindred*, 250 Ill. App. 3d 997, 1003, 620 N.E.2d 520 (1993). The trial court is deemed to know the Ordinance, and the lease was admitted into evidence. As landlord notes, the trial court's articulation of its findings indicates that the trial court's assessment of tenant's motive formed the basis for its decision in landlord's favor:

> "I believe based on my view of the evidence and particularly having listened to the witnesses, the Plaintiff here, a lay person, was eager to get out of her lease by any means available to her and she was eager to get out because she had a motive, the motive to which she wanted to move and in which has confided she now lives with her mom and boyfriend."

The Ordinance provides tenants a remedy and prescribes the manner in which that remedy is to be invoked, notwithstanding the trial court's preoccupation with tenant's motivation for asserting her statutory rights.

Landlord cites no authority allowing a trial court to consider the tenant's motives. Tenant, on the other hand, cites *Meyer v. Cohen*, 260 Ill. App. 3d 351, 632 N.E.2d 22 (1993), for the proposition that a tenant's motive is irrelevant and the Ordinance requires strict compliance. *Meyer*, however, does not directly address this proposition. Rather, the *Meyer* court simply held that the tenant was entitled under the Ordinance to terminate her lease after notifying the landlord of his failure to attach a summary of the Ordinance to the lease as required by section 5—12—170 of the Ordinance, formerly section 193.1—17. *Meyer*, 260 Ill. App. 3d at 358.

■ Landlord attempts to impress a "clean hands" doctrine upon tenant as a condition to relief under the Ordinance. Such a theory is not overlaid upon this Ordinance, adopted to protect tenants from landlords in recognition of the historical disparity between the

bargaining powers of landlord and tenant, so that such a defense would be at a cross-purpose with the reasons behind the enactment of the Ordinance.

Tenant has simply invoked her rights under the Ordinance seeking to hold landlord to its obligations under the Ordinance. The court is not at liberty to depart from the plain language of the Ordinance by reading into it exceptions, limitations or conditions that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990).

Accordingly, we hold that a tenant's motive for invoking the right of termination provided by the Ordinance is simply not relevant to the determination whether the termination is valid.

■ What remains is to determine whether tenant validly terminated her lease and is thus entitled to the relief she sought. Tenant contends she has three independent grounds for termination of her lease. First, tenant asserts a right to terminate under section 193.1—14 because landlord employed a lease containing four paragraphs prohibited by the Ordinance. The challenged lease provisions involve landlord's attempt to shift the burden of payment of attorney fees, limit its own liability, prescribe the manner of notice required in the event of tenant's default and allow landlord preferential termination rights.

1. Attorney fees

Paragraph 22 provides:

"Lessee shall pay all costs, expenses and attorneys fees which shall be incurred or expended by Lessor due to Lessee's breach of the covenants and agreements of this Lease, *to the extent permissible by Court rules, Court order, state statute or Local Ordinance*." (Emphasis added.)

Section 193.1—14(f) prohibits agreement that:

"in the event of a lawsuit arising out of the tenancy the tenant will pay the landlord's attorney's fees *except as provided for by court rules, statute or ordinance*." (Emphasis added.) Chicago Municipal Code § 193.1—14(f) (amended September 8, 1986).

The lease language limits the fee-shifting provision to "the extent permissible" by courts, statute or ordinance, while the Ordinance prohibits landlord's right to reimbursement of fees "except as provided for by court rules, statute or ordinance." Both the lease and section 193.1—14(f) express conditions compatible with each other so that no violation of the Ordinance occurred.

2. Liability.

Paragraph 27 provides: "Except as provided by Illinois statute, municipal statute and/or court rules, Lessor shall not be liable for any damage occasioned by failure to keep premises in repair \*\*\* nor for damages to Lessee or others claiming through Lessee for any loss or damages of or to property wherever located in or about the building or premises nor for any damages arising from acts of neglect or neglect from co-tenants or other occupants of the building, or of any owners or occupants of adjacent or contiguous property."

Section 193.1—14(c) prohibits: "the limitation of *any* liability of the landlord or tenant arising under law or to indemnify the landlord or tenant for that liability or the costs connected therewith." (Emphasis added.) Chicago Municipal Code § 193.1—14(c) (amended September 8, 1986).

■ At first glance, the condition expressed in the lease paragraph dealing with liability appears to be similar to the conditional language of the paragraph dealing with fees and expenses charged against the tenant. However, there are several differences. First, on this subject, the Ordinance prohibits "any" liability being limited and the lease makes only a conditional limitation of such liability. The city council has not allowed for the kind of conditional language employed elsewhere in the lease. The command to delete "any" exculpatory clauses appears to be complete and unambiguous and does not require or allow qualification.

Second, the General Assembly has enacted the Lessor's Liability Act, which declares every agreement exempting a landlord from liability to be "void as against public policy and wholly unenforceable." 765 ILCS 705/1 (West 1992). Finally, the exceptions in the lease go to those provided by "Illinois statute, municipal statute and/or court rules." There is no consideration of the liability imposed by common law cases relating to landlord-tenant relationships.

While there may be some ambiguity as to the scope of the exemptions contained in the lease, exculpatory clauses in lease instruments are to be strictly construed against the party for whose benefit they have been drawn. *Stein v. Yarnall-Todd Chevrolet, Inc.*, 41 Ill. 2d 32, 241 N.E.2d 439 (1968). For these reasons, the landlord had an obligation to deliver to tenant, within 15 days of demand, a new lease with the conditional exculpatory clause deleted.

3. Notice and Process.

Paragraph 29 provides:

*"Subject to the provision of the Chicago Landlord tenant ordinance,* if default be made in the payment of the above rent, or any part thereof *** Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to other extent permitted by law) without notice of process of law."* (Emphasis added.)

Section 193.1—14(d) prohibits waiver of any "written termination of tenancy notice or manner of service thereof provided under state law or this chapter." Chicago Municipal Code § 193.1—14(d) (amended September 8, 1986).

■ The paragraph dealing with the waiver of notice will suffer the same consequences as that of the provision exculpating liability. Paragraph 29 of the lease authorizes the landlord to declare the term ended and reenter the premises without notice, "[s]ubject to the provision of the Chicago Landlord tenant ordinance." The Ordinance, however, expressly prohibits such waiver of written termination of tenancy and does not contain any clause that would accommodate the conditional language of the lease similar to that employed in the paragraph dealing with fees and expenses. The prohibition against waiver is clear and absolute.

4. Right of Termination.

Paragraph 33 provides:

"In the event the property is sold, traded or otherwise transferred, the Lessor or Transferee retains the right to terminate said lease upon 60 days prior written notice to the tenant."

Section 193.1—14(g) prohibits agreement that "either party may cancel or terminate a rental agreement at a different time or within a shorter time period than the other party, unless such provision is disclosed in a separate written notice." Chicago Municipal Code § 193.1—14(g) (amended September 8, 1986).

■ Lease paragraph 33 violates subsection (g) because it does not allow tenant the same 60-day right to termination.

Section 193.1—14 further provides, in the event a lease contains a provision which violates this section:

"[T]he tenant may give written notice to the landlord *** and request that it be cured. The landlord shall cure the violation by tendering to the tenant within 15 days a new lease which shall be identical in all respects to the existing lease, except that all provi-

sions which violate this section shall be omitted or revised to conform to the requirements of this Section. In the event that the landlord fails to cure the violation, the tenant may terminate the rental agreement by written notice. The written notice shall specify the date of termination no later than 30 days from the date of the written notice." Chicago Municipal Code § 193.1—14 (amended September 8, 1986).

■ Tenant sent written notification to landlord on May 14, 1991, demanding a new lease purged of the improper provisions. Landlord received this notice and demand on May 16 by certified mail, but did not respond or tender a new lease within 15 days. Tenant, therefore, had the right to terminate the lease pursuant to section 193.1—14, and the trial court erred in finding to the contrary.

Landlord argues that the fact none of the inappropriate provisions were used against tenant precludes her right to terminate the lease. However, as tenant points out, although tenant may not be entitled to damages (two months' rent) because of this lack of impact upon her tenancy, her right to terminate is unaffected. It is the presence of the illegal provisions and the landlord's failure or unwillingness to cure them that allows tenant to terminate a tainted tenancy. Chicago Municipal Code § 193.1—14 (amended September 8, 1986).

■ Landlord argues that tenant's termination based on section 193.1—14 was ineffective because landlord was not given time to cure the violation by tendering a new and conforming lease. This argument is based on a misreading of the relevant section. Section 193.1—14 provides that landlord shall cure the violation "within 15 days." Thereafter, tenant need only provide landlord with written notice of termination "*no later* than 30 days from the date of the written notice." (Emphasis added.) Chicago Municipal Code § 193.1—14 (amended September 8, 1986). Tenant's June 1, 1991, notice to terminate was received by landlord within the required 30-day period. Nothing more was required of tenant and her termination was effective as of that date or on the next day, June 2.

■ Second, tenant claims that landlord's failure to disclose the name, address and telephone number of the person authorized to act on behalf of the owner for service of process and for the purpose of receiving notices and demands violated section 193.1—9 and entitled her to terminate her tenancy. Chicago Municipal Code § 193.1—9 (amended September 8, 1986). The tenant sent "notices and demands" which were received by landlord and which formed the basis of this lawsuit. Also, the lease contains the required information on its first page. The trial court properly rejected this claim.

■ Third, tenant claims she properly terminated her lease under section 193.1—10(a) because the landlord failed to disclose in writing

any building code violations which had been cited by the City during the 12 months prior to the lease agreement. Section 193.1—10(a) provides that landlord must disclose to tenant in writing at the time of leasing or renewal "[a]ny code violations which have been cited by the City of Chicago during the previous 12 months *** and provide notice of the pendency of any code enforcement litigation." Chicago Municipal Code § 193.1—10(a) (amended September 8, 1986).

It is undisputed that landlord was cited for two code violations, *i.e.*, peeling exterior paint and a broken gutter, by the City on August 30, 1990, within 12 months of tenant's lease renewal in September 1990. Failure to disclose such violations entitles tenant to terminate her lease after giving landlord 30 days to supply the required information. Chicago Municipal Code § 193.1—10(b) (amended September 8, 1986). Tenant sent notice and demand of this information to landlord on May 14, 1991. Landlord did not disclose these violations and tenant argues her tenancy therefore terminated on June 15, 1991, 30 days after the May 14, 1991, notice and request.

Landlord claims that it was not given the full 30 days to cure the violation since tenant vacated the apartment on May 31, 1991. The termination of a lease and the surrender of the premises are different events (*Meyer*, 260 Ill. App. 3d at 361), and tenant is correct that she need not have resided in the apartment until June 15 in order for the termination to take effect. Rather, landlord's failure to disclose following tenant's demand terminated the tenancy by operation of law after the 30-day cure period. However, if that is the termination date, she will be charged with rent to the fifteenth of June.

Landlord also argues that tenant's termination based on section 193.1—10(a) was ineffective because (1) the code violations were "not material" and (2) in no way affected the habitability of the premises. However, there is no *de minimis* exception to section 193.1—10(a). It requires disclosure of "any code violations *** for the dwelling unit and common areas." Chicago Municipal Code § 193.1—10(a) (amended September 8, 1986). Moreover, unlike other sections of the Ordinance which require a violation to be "material," this section is aimed at disclosure of all violations and not the degree to which they impact habitability.

■ Since tenant properly exercised her right to terminate the lease under either or both sections 193.1—14 and 193.1—10(a), the trial court's contrary finding must be reversed. Our holding, in turn, means that the trial court's setoff award of tenant's security deposit as back rent was in error since tenant owed no rent under a terminated tenancy except to the date of termination and landlord claimed no damage to the apartment.

Tenant is also entitled to relief under section 193.1—8 for the landlord's act of commingling tenant's security deposit. It is undisputed that landlord deposited the two increases in the security deposit, $20 and $25, respectively, into its rent account. This is clearly a commingling of tenant's assets with landlord's own.

The landlord urges a *de minimis* exception to the Ordinance's prohibition against commingling, arguing that since the bulk of the security deposit remained segregated, there was "no harm." Furthermore, landlord seeks to escape sanctions for commingling because there was "no intent to commingle," the amounts of $20 and $25 being "mistakenly" deposited into the landlord's own account.

■ All relevant authority, mostly in the arena of attorney disciplinary cases, rejects excuses for commingling and the "no harm" argument where the funds were returned. See *In re Young*, 111 Ill. 2d 98, 103, 488 N.E.2d 1014 (1986); *In re Enstrom*, 104 Ill. 2d 410, 472 N.E.2d 446 (1984); *In re Grant*, 89 Ill. 2d 247, 433 N.E.2d 259 (1982). Landlord is unable to cite authority recognizing any exceptions to section 193.1—8, and we decline the invitation to find an exception for small amounts or inadvertent commingling.

■ Landlord argues in the alternative that should this court find tenant is entitled to sanctions relating to her security deposit, the statutory penalty should be limited to two times the amounts actually commingled, *i.e.*, $20 and $25. Although this approach is fair, we are limited by a recent decision in the first district where the court, applying section 5—12—080 of the current Ordinance, affirmed a judgment for twice the tenant's entire security deposit although part of the deposit had been previously returned to the tenant. *Solomon v. American National Bank & Trust Co.*, 243 Ill. App. 3d 132, 135, 612 N.E.2d 3 (1993). Accordingly, tenant "shall be awarded damages in an amount equal to two times the security deposit plus interest at five percent together with court costs and reasonable attorney's fees." Chicago Municipal Code § 193.1—8(f) (amended September 8, 1986).

■ Tenant further claims that landlord failed to pay tenant 5% interest on her security deposit. Section 193.1—8(c) provides:

> "A Landlord who holds a security deposit *** shall pay interest to the tenant at the rate of five percent per year. The landlord shall, within 30 days after the end of each 12 month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due." Chicago Municipal Code § 193.1—8(c) (amended September 8, 1986).

The trial court correctly decided this issue but offset the amount against what it believed was due landlord. We affirm the finding in tenant's favor, but remand to calculate the amount and statutory

penalty for nonpayment (two times the security deposit for the 12-month period ending on September 30, 1991) due tenant. This award is singular and represents relief for all violations relating to tenant's security deposit.

■ Lastly, tenant argues the trial court's award of some $600 in attorney fees was unreasonable. Section 193.1—8 provides:

> "If the Landlord or Landlord's agent fails to comply with this section, the Tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at five percent together with court costs and *reasonable attorneys' fees.*" (Emphasis added.) Chicago Municipal Code § 193.1—8(f) (amended September 8, 1986).

The trial court found for tenant under section 193.1—8 and awarded her attorney fees under that section.

Although we are not convinced by the record that the parties were offered a full hearing on this issue, tenant now argues that the trial court's award of fees was unreasonable and claims fees in excess of $25,000. Unfortunately, appellate judges are not often allowed the pleasure of seeing whether tenant's attorney asked for this sum with a straight face. This is a case involving two months' rent and technical violations of Chicago's ordinance which did not affect the tenant's occupancy or enjoyment of the premises. We do not suggest that the award was unreasonable, only that tenant was entitled to an appropriate hearing.

In assessing the reasonableness of attorney fees, the trial court should consider a variety of factors, including the skill and standing of the attorney employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation. *Olsen v. Staniak*, 260 Ill. App. 3d 856, 865-66, 632 N.E.2d 168 (1994); *Chicago Title & Trust Co. v. Chicago Title & Trust Co.*, 248 Ill. App. 3d 1065, 618 N.E.2d 949 (1993). The trial court is permitted to use its own knowledge and experience to assess the time required to complete particular activities, and a reviewing court may not reverse an award of attorney fees merely because it may have reached a different conclusion. *In re Estate of Healy*, 137 Ill. App. 3d 406, 411, 484 N.E.2d 890 (1985).

It is incumbent upon the petitioner for fees to specify the services performed, by whom they were performed, the time expended and an hourly rate charged therefore. Petitioner must present records maintained during the litigation containing facts and computations upon which the charges are predicated. *Mars v. Priester*, 205 Ill. App.

3d 1060, 563 N.E.2d 977 (1990); see also *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 518 N.E.2d 424 (1987).

We remand for determination of reasonable attorney fees in a manner consistent with this opinion and the Ordinance.

For the reasons set forth above, we affirm in part, reverse in part and remand.

Affirmed in part; reversed in part and remanded.

TULLY, P.J., and CERDA, J., concur.